MATTHEW M. LITVAK, Plaintiff-Appellant, v. 155 HARBOR DRIVE CON-
DOMINIUM ASSOCIATION, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—91—2121

Opinion filed March 22, 1993.—Rehearing denied May 25, 1993.

Matthew M. Litvak, of Chicago, appellant *pro se.*

Gottlieb & Schwartz, of Chicago (David Sugar, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Matthew Litvak, a unit owner in defendant 155 Harbor Drive Condominium Association (Association), filed suit against the Association and defendant Monroe Roth, the president of the Association's board of directors (Board), alleging that defendants had acted improperly in adopting a budget and authorizing certain expenditures for 1991. The circuit court of Cook County granted summary judgment in favor of defendants. Plaintiff now appeals.

The record on appeal indicates the following facts. The Association is located in a 742-unit high-rise building. The Association is governed by a declaration of condominium ownership (Declaration). The Declaration provides, in relevant part:

> "Except as otherwise provided in this Declaration, the Common Elements shall consist of all portions of the Property except the Units. *** [T]he Common Elements shall include the *** recreation rooms, and other amenity areas, *** storage areas, management offices, *** all structural parts of the Building, pipes, ducts, flues, chutes, conduits, wires and other utility installations to the outlets, and such component parts of walls, floors and ceilings as are not located within the Units ***.
>
> * * *
>
> Subject to the provisions of Article XII hereof, the Board shall have the following general powers:
>
> * * *
>
> (b) The Board's powers hereinafter enumerated shall be limited in that the Board shall have no authority to acquire and pay for out of the maintenance fund any structural alterations, capital additions to, or capital improvements of the Common Elements (other than for purposes of replacing or restoring portions of the Common Elements, subject to all the provisions of this Declaration) requiring an expenditure in excess of One Hundred Dollars ($100) multiplied by the number of Units in the Building, without in each case the prior approval of the Voting Members holding two thirds (2/3) of the total votes.
>
> * * *
>
> (k) *** [T]he Board for the benefit of all the Owners shall

acquire and pay for out of the maintenance funds hereinafter provided for, the following:

* * *

(3) Painting, cleaning, outside window washing, tuckpointing, maintenance, decorating, repair and replacement of the Common Elements *** and such furnishings and equipment for the Common Elements as the Board shall determine are necessary and proper."

On September 18, 1990, the Board adopted a resolution authorizing the expenditure of $251,860 of Association funds for the replacement of the building's roof. On November 20, 1990, the Board adopted a resolution accepting and approving as amended the Association's 1991 estimated operating budget. The record contains a letter dated November 26, 1990, from the Association treasurer summarizing this budget. The Association caused copies of the 1991 budget to be mailed to the unit owners the next day. On December 18, 1990, the Board adopted resolutions authorizing the expenditure of approximately $125,000 of Association funds for the renovation of the Association's health club area and approximately $107,245 for the redecoration of one of the Association's function rooms.

On January 11, 1991, plaintiff filed suit against defendants. Plaintiff subsequently amended and supplemented the complaint to include seven counts seeking declaratory and injunctive relief. Counts I and II alleged that defendants violated the Declaration by authorizing the renovation of the health club without a two-thirds vote of unit owners. Counts III and IV alleged that defendants violated the Declaration by authorizing the roof replacement without a two-thirds vote of unit owners. Counts V and VI alleged that defendants violated the Declaration by authorizing the redecoration of the function room without a two-thirds vote of unit owners. Count VII alleged that defendants violated the Illinois Condominium Property Act (Ill. Rev. Stat. 1989, ch. 30, pars. 301 through 331) (the Act) by not sending out copies of the 1991 budget to unit owners until after it had been accepted and approved by the Board.

On April 25, 1991, defendants moved for summary judgment and submitted the supporting affidavit of Cindy Boyd, the Association's property manager. The Boyd affidavit contained a breakdown of the challenged expenditures. Defendants contended that the Boyd affidavit showed that less than $74,200 (742 units X $100) of each challenged expenditure were nonreplacement or nonrepair costs. The Boyd affidavit also noted that the Board had "approved" rather than "adopted" the 1991 budget and that copies of the budget were mailed

more than 30 days before the commencement of the fiscal year covered by the 1991 budget. The Boyd affidavit also indicated that there had been no attempt by any unit owner to "recall" the budget under section 18(a)(8)(ii) of the Act (Ill. Rev. Stat. 1989, ch. 30, par. 318(a)(8)(ii)).

On May 7, 1991, plaintiff filed a response to defendant's motion. Plaintiff submitted three affidavits of his own. The same day, plaintiff filed his own motion for summary judgment, but never noticed it for hearing or presented it to the trial court. On May 23, 1991, plaintiff moved to strike the Boyd affidavit; the trial court denied the motion.

On May 31, 1991, following a hearing on the matter, the trial court granted defendants' motion for summary judgment. Plaintiff filed a timely notice of appeal to this court.

I

Plaintiff claims that the expenditures challenged in counts I through VI violate the Association Declaration. As quoted above and given that the Association has 742 units, section 5.07(b) requires a two-thirds vote of the entire membership to approve expenditures for capital additions and capital improvements in excess of $74,200 unless those expenditures are for the purpose of replacing or restoring portions of the common elements. In order to determine whether section 5.07(b) requires a membership vote appears to require definition of certain terms therein.

Capital improvements are generally defined as " 'betterments of a long lasting nature which add to the capital value of the property.' " (Emphasis omitted.) (*In re Marriage of Aird* (1988), 175 Ill. App. 3d 870, 873, 530 N.E.2d 556, 558, quoting *Finn v. McNeil* (1987), 23 Mass. App. Ct. 367, 372-73, 502 N.E.2d 557, 561-62.) Capital improvements may include "rewiring ***, new light fixtures, new screens, new locks, new fence and other similar items." (*Craven v. Craven* (1950), 407 Ill. 252, 262-63, 95 N.E.2d 489, 495, quoted in *Aird*, 175 Ill. App. 3d at 872, 530 N.E.2d at 558.) They may also include roof and gutter replacement. (*Aird*, 175 Ill. App. 3d at 873, 530 N.E.2d at 558.) However, when construing the phrase "construction of an improvement to real property," this court has distinguished improvement from "mere repair or replacement." (*Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 613, 483 N.E.2d 613, 616.) This court has also indicated that painting and carpeting are not capital improvements because "they are performed solely for ordinary maintenance or cosmetic reasons." *Aird*, 175 Ill. App. 3d at 873, 530 N.E.2d at 558.

■■ Defendants argue that section 5.07(b) allows the Board discretion to approve capital improvements or additions in excess of $74,200 without a membership vote, so long as the portion of said expenditures that are not for the purpose of replacing or restoring the common elements is less than $74,200. Assuming *arguendo* that defendants are correct, the phrase "replacing or restoring" must be defined. Generally, to "replace" is:

> "To place again, to restore to a former condition. Illinois Cent. R. Co. v. Franklin County, 387 Ill. 301, 56 N.E.2d 775, 779. Term, given its plain, ordinary meaning, means to supplant with substitute or equivalent. Olenick v. Government Employees Ins. Co., 42 A.D.2d 760, 346 N.Y.S.2d 320, 321. To take the place of." (Black's Law Dictionary 1168 (5th ed. 1979).)

These definitions suggest that the "replacing or restoring" exception to the limitation on the Board's ability to approve expenditures for capital improvements contemplates that the "replacement" of common elements will not result in an improvement over the original quality of such elements when initially acquired.

This interpretation accords with the Historical and Practice Notes to the Act:

> "A well recognized distinction found in many declarations exists between (i) maintenance of current facilities through operating expenses and expenditures for repairs and replacement and (ii) capital expenditures which involve expansion or putting in better quality facilities than existed previously." (Ill. Ann. Stat., ch. 30, par. 318.4, Historical & Practice Notes, at 251-52 (Smith-Hurd Supp. 1992).)

Defendants argue that the Historical and Practice Notes do not warrant discussion because they are not binding on this court. Though not binding on this court, both the supreme court and this court have referred to such notes in other contexts on numerous occasions. (*E.g., Stevenson v. Hawthorne Elementary School, East St. Louis School District No. 189* (1991), 144 Ill. 2d 294, 303, 579 N.E.2d 852, 856; *Chapman v. United Insurance Co. of America* (1992), 234 Ill. App. 3d 968, 971-72, 602 N.E.2d 45, 47.) We consider them persuasive in this context also.

## II

Given this interpretive framework, we turn to address whether summary judgment was proper in this case. Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21.) Nevertheless, because summary judgment is a drastic method of terminating litigation, the movant's entitlement must be free from doubt. *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233, 564 N.E.2d 778, 780.

In this case, the parties argued extensively about the definition of a capital improvement or addition. However, the record does not indicate that the parties or the trial court discussed, let alone agreed upon, any definition of "replacement." Instead, the parties would often allege in conclusory terms that a given expenditure was or was not for the purposes of repair or replacement. The Boyd affidavit contains nothing that indicates that the affiant applied the definition of "replacement" discussed above or that the affiant is better qualified by her position as property manager to apply the definition than plaintiff.

■ Of course, the determination of whether an expenditure is made for the purposes of replacement would ultimately be made by the trial court. However, the record is largely devoid of any evidence (other than conflicting and conclusory lay testimony) to which the trial court could have applied this definition regarding many of the challenged items. The proper characterization of all of the challenged costs is necessary to the disposition of this case. Accordingly, there appears to be a material question of fact as to whether the challenged expenditures required a membership vote under the terms of the Declaration.

Nevertheless, this court may affirm summary judgment for any reason appearing in the record, regardless of whether the reasoning of the trial court was correct. Consequently, our uncertainty over whether the proper definition of "replacement" was used in this case does not extend to the grant of summary judgment regarding the roof replacement. The Boyd affidavit states that the old roof is being replaced with a virtually identical roof. Plaintiff argues that the old roof did not need to be replaced completely. However, whether the roof needed to be replaced completely is a question outside the allegation that the Board violated the Declaration. Rather, it is a question of whether the Board members violated their fiduciary duties to plaintiff. Plaintiff did not allege breach of fiduciary duty as to this project in his complaint, thus waiving the claim on appeal.

In sum, we affirm summary judgment as to counts III and IV of plaintiff's complaint regarding the roof replacement project. We also

reverse summary judgment on counts I, II, V and VI and remand these counts for further proceedings consistent with this opinion.

### III

Finally, plaintiff contends that the trial court erred in granting summary judgment to defendants on count VII of his complaint, which alleges that defendants' budget process violated the Act. Section 18 of the Act provides in relevant part as follows:

"§18. Contents of bylaws. The bylaws shall provide for at least the following:

(a) * * *

* * *

(6) that each unit owner shall receive, at least 30 days prior to the adoption thereof by the board of managers, a copy of the proposed annual budget * * *;
* * *

(8)(i) that each unit owner shall receive notice, in the same manner as is provided in this Act for membership meetings, of any meeting of the board of managers concerning the adoption of the proposed annual budget or any increase, or establishment of an assessment * * *;
* * *

(b) * * *

* * *

(6) that written notice of any membership meeting shall be mailed or delivered giving members no less than 10 and no more than 30 days notice of the time, place and purpose of such meeting[.]" (Ill. Rev. Stat. 1989, ch. 30, pars. 318(a)(6),(a)(8)(i),(b)(6).)

A condominium board of managers' proper exercise of its fiduciary duties requires strict compliance with these bylaws. *Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 534, 449 N.E.2d 151, 157.

■ In this case, the Board adopted a resolution accepting and approving as amended the Association's 1991 estimated operating budget on November 20, 1990. The record contains a letter dated November 26, 1990, from the Association treasurer summarizing this budget. The Association caused copies of the 1991 budget to be mailed to the unit owners the next day. In one of his affidavits, plaintiff states that he received no notice of the proposed 1991 budget and observed notice of a meeting to discuss the 1991 budget posted in the common hallways of the building four days prior to the November 20, 1990, meeting. In another affidavit, plaintiff states that if Board

member Robert Keegan were called as a witness, he would testify that there has not been any action or discussion regarding the 1991 budget since November 20, 1990. The record does not appear to indicate that defendants moved to strike plaintiff's affidavits.

The trial court determined that the procedure followed in this case fulfilled the purpose of the Act because it gave unit owners at least 30 days' notice of any assessment increases and afforded unit owners an opportunity to "recall" a budget under section 18(a)(8)(ii) of the Act (Ill. Rev. Stat. 1989, ch. 30, par. 318(a)(8)(ii)). This rationale, however, does not address the question of whether such notice should be given before the Board takes action or afterwards. Moreover, section 18(a)(8)(ii) of the Act provides only for "recall" of "adopted" budgets where assessments are increased more than 15% above the previous year's level. (See Ill. Rev. Stat. 1989, ch. 30, par. 318(a)(8)(ii).) The record indicates that assessments were not increased by an amount that would permit plaintiff to petition for a "recall" of the budget. However, section 18(a)(6) and section 18(a)(8)(i) both refer to "proposed annual budget[s]." (See Ill. Rev. Stat. 1989, ch. 30, pars. 318(a)(6),(a)(8)(i).) Thus, it appears that sections 18(a)(6) and 18(a)(8)(i) apply to situations that section 18(a)(8)(ii) does not address.

Furthermore, the record is devoid of any determination that the November 20, 1990, Board meeting was not a meeting "*concerning* the adoption of the proposed annual budget" within the meaning of the Act. (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 30, par. 318(a)(8)(i).) Finally, despite defendants' contention that any violation of the Act was "hypertechnical," there was no determination as to whether the procedure here *strictly* complied with the bylaws so as to fulfill defendants' fiduciary duties to the unit owners. Accordingly, we cannot conclude that summary judgment regarding this claim was free from doubt.

For all of the aforementioned reasons, we affirm the May 31, 1991, order of the circuit court regarding counts III and IV of plaintiff's complaint, but reverse and remand the remaining counts for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

MANNING, P.J., and O'CONNOR, J., concur.