SIXTH DIVISION
December 19, 2008

No. 1-07-2927

| | | |
|---|---|---|
| EVELYN DAVIS, JOHN F. BUKACEK, RICHARD ABEL, TEODORA M. BERMUDEZ, MAXIMO C. BERMUDEZ, ALBERT BOWEN, DANIEL GILMOUR, EWA GRIGAR, PETER GRIGAR, N. CHUNG KANG, AGATA ZAWIERTA, and JAN ZAWIERTA, Individually and on Behalf of Granville Beach Condominium Association, Inc., | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 04 CH 19293 |
| JOE DYSON, PAULA FAILLA, DAVID HAMILTON, MICHAEL JONES, LILLIAN LAPALIO, AUGUSTINE MARRON, MARY ANN MAYFIELD, TIM PATULA, DAVID SIEGEL, and ANNA SKALKA, | ) ) ) ) ) ) | Honorable Dennis Burke Judge Presiding. |
| Defendants-Appellees | ) ) | |
| (Granville Beach Condominium Association, Inc., | ) ) | |
| Defendant). | ) | |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Plaintiffs, homeowners in the Granville Beach Condominium Association (Association), brought suit against former members of the Association's board of directors. They alleged that the property manager embezzled more than $550,000 from the Association, and the former directors failed to take proper precautions to protect the Association from such losses. As a result, plaintiffs sought damages against the former directors for this alleged breach of fiduciary

No. 07-2927

duty, both on a derivative basis and as individuals.

The trial court dismissed both claims. With respect to the derivative claim, it found that only the Association itself, not the homeowners, had standing to bring a derivative lawsuit against the former directors. With respect to the individual claim, it found that plaintiffs again lacked standing because they failed to allege any separate and distinct injury. Plaintiffs appeal the dismissal of both claims. For the reasons that follow, we reverse on the matter of derivative standing but affirm on the matter of individual standing.

I. BACKGROUND

Evelyn Davis, John F. Bukacek, Richard Abel, Teodora M. Bermudez, Maximo C. Bermudez, Albert Bowen, Daniel Gilmour, Ewa Grigar, Peter Grigar, N. Chung Kang, Agata Zawierta, and Jan Zawierta (collectively plaintiffs) brought suit against Joe Dyson, Paula Failla, David Hamilton, Michael Jones, Lillian LaPalio, Augustine Marron, Mary Ann Mayfield, Tim Patula, David Siegel, and Anna Skalka (collectively the director defendants), as well as the Association. In their third amended complaint, which was filed on September 22, 2006, and now frames the issues, plaintiffs alleged the following.

Plaintiffs state that they are owners of condominium units at Granville Beach Condominiums, a Chicago, Illinois, property consisting of over 300 units. All unit owners, including plaintiffs, are members of the Association, which is an Illinois not-for-profit corporation. Under the condominium bylaws, the Association is governed by an elected board of directors. The director defendants all allegedly served on the Association's board of directors at some time between 1998 to 2003; none of them remained directors by the time the complaint

No. 07-2927

was filed.

Plaintiffs further allege that from 1998 to 2003, the Association's property manager was Larson Property Management, Inc. (LPI). During this time period, LPI's principal, Warren Larson, allegedly embezzled at least $550,000 from Association funds by forging the signature of director Skalka onto over 100 Association checks. According to plaintiffs, the Association received a checking account statement every month containing a copy of every check presented for payment, including Larson's forged checks. However, the director defendants allegedly never reviewed any of these statements, nor did they order any financial review or audit of the Association's records, nor did they properly supervise the financial dealings between Larson and the Association. Plaintiffs contend that if the director defendants had done any of these things, they would have discovered Larson's embezzlement (or, alternately, that proper supervision might have deterred Larson in the first place). In fact, Larson's fraud was allegedly not discovered until July 2003, when the building's on-site manager reviewed one of the monthly checking statements.

Plaintiffs aver that the director defendants failed to ensure that the Association had sufficient insurance coverage, in the form of a fiduciary bond or a fidelity bond, to adequately protect the Association's funds. This failure, according to plaintiffs, was a violation of both the Condominium Property Act (Condo Act) (765 ILCS 605/1 *et seq.* (West 1996)) and the Association's bylaws. Plaintiffs also allege that the director defendants failed to obtain advice of counsel regarding their duties with respect to insurance coverage, Association finances, and supervision of key personnel. If they had obtained advice of counsel regarding these matters,

plaintiffs state that such advice would have been early enough to limit the Association's losses from Larson's embezzlement.

Plaintiffs state that as a result of the above events, the Association not only lost over $550,000 in embezzled funds, but also suffered out-of-pocket expenses of approximately $200,000 to $250,000, since it had to hire attorneys, accountants, and other professionals to obtain advice and investigate the loss. After Larson's embezzlement was uncovered, the Association allegedly sought indemnification from its insurer, and it also brought suit against Larson and the Association's bank; however, it was only able to recover $60,000 from the former action and $4,000 from the latter, leaving it with nearly $800,000 in outstanding losses.

Plaintiffs therefore seek damages in two counts from the director defendants. Both counts are for breach of fiduciary duty. Count I is a derivative claim on behalf of the Association for the damages the Association suffered as a result of the director defendants' alleged failure to take due care to protect the Association against Larson's fraud. In support of this count specifically, plaintiffs allege that from July 2004 to November 2004, residents of Granville Beach Condominiums, including plaintiffs Davis and Bukacek, requested that the Association's current board of directors file suit against the director defendants. However, the board of directors allegedly refused. According to plaintiffs, not only did they decline to vote on the matter, but they declined to investigate the conduct of the director defendants or form a committee to consider the residents' requests. Plaintiffs further allege that the board's failure to take action against the director defendants is a result of its failure to obtain and consider sufficient information to make an informed decision, which they say is a violation of the business

No. 07-2927

judgment rule.

Count II is a claim made by the plaintiffs as individuals for the alleged lowered market value of their condominium units. In support of this count, plaintiffs allege that due to the losses the Association incurred in connection with Larson's embezzlement, the Association has fallen into ill repute. As a result, according to plaintiffs, the market value of each of their units has declined: numerous members have sought to sell their units, but some prospective buyers have rejected these units due to the Association's ill repute, while others have required substantially cheaper prices than otherwise comparable units within the area are sold for.

Directors Dyson and Siegel filed a motion to dismiss plaintiffs' complaint on October 23, 2006. This motion was subsequently joined by director Patula. In support of this motion, Dyson and Siegel argued that plaintiffs lacked standing for their suit. With respect to count I, the derivative claim, they contended that the Association's board of directors was the sole party with the power to bring a derivative claim against third parties who had wronged the Association. Condominium owners, they claimed, could bring a derivative claim against the board of directors, but not against anyone else. With respect to count II, the individual claim, they contended that plaintiffs had failed to allege any separate and distinct injury to themselves, as required for standing.

Dyson and Siegel also raised several other arguments. The ones pertinent to this appeal are as follows: First, they argued that plaintiffs failed to state a claim for breach of fiduciary duty, since they did not allege that the director defendants acted other than in the best interests of the Association. Second, they argued that the business judgment rule shielded the director

-5-

defendants from liability, as plaintiffs had failed to allege any fraud, illegality, conflict of interest, or bad faith on their part. Third, they argued that the doctrine of election of remedies precluded plaintiffs' suit, as the Association had already chosen to sue its bank to recover damages from Larson's embezzlement.

The trial court granted defendants' motion to dismiss in an order dated April 26, 2007. (Originally, this order only applied to the three petitioning director defendants; however, the court later expanded it to cover all of the director defendants in a May 31, 2007, order.) The court stated that it agreed with defendants' contentions regarding standing: namely, that under the facts as alleged in their complaint, plaintiffs lacked standing to bring suit against the former directors on either a derivative or an individual basis. The court made no ruling upon the rest of the defendants' arguments.

Subsequently, the court made a finding pursuant to Illinois Supreme Court Rule 304(a) that there was no just reason to delay appeal or enforcement of its dismissal order. Plaintiffs timely filed the instant appeal.

II. ANALYSIS

On appeal, plaintiffs argue that the trial court erred in finding that they lacked standing to bring suit against the director defendants either in a derivative or an individual capacity. Defendants contend that the trial court was correct in its determination of standing. In the alternative, they contend that the trial court's judgment should be affirmed due to the business judgment rule, the doctrine of election of remedies, and the fact that plaintiffs have failed to properly allege a breach of fiduciary duty.

No. 07-2927

We review the court's dismissal of plaintiffs' claims *de novo*. *Hadley v. Illinois Dept. of Corrections*, 224 Ill. 2d 365, 370, 864 N.E.2d 162, 165 (2007). Dismissal is appropriate where no set of facts could be proved under the pleadings that would entitle plaintiffs to relief. *Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill. App. 3d 1028, 1033, 753 N.E.2d 370, 374 (2001); *Wright v. City of Danville*, 174 Ill. 2d 391, 398, 675 N.E.2d 110, 115 (1996). In reviewing a motion to dismiss, we accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiffs. *Casualty*, 323 Ill. App. 3d at 1033, 753 N.E.2d at 374. However, plaintiffs may not rely on factual or legal conclusions that are not supported by factual allegations. *Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 285, 876 N.E.2d 156, 161 (2007). We may affirm the dismissal of a complaint on any ground that is apparent from the record. *Golf v. Henderson*, 376 Ill. App. 3d 271, 275, 876 N.E.2d 105, 109 (2007).

A. Derivative Claim

Plaintiffs first contend that condominium owners, such as themselves, have standing to bring derivative suits against third parties, such as the director defendants; they argue that a contrary ruling has no support in Illinois law and, moreover, would defeat the purpose of derivative lawsuits as established through long-standing precedent.

A derivative action is an action that a corporate shareholder brings on behalf of a corporation to seek relief for injuries done to that corporation, where the corporation either cannot or will not assert its own rights. *Caparos v. Morton*, 364 Ill. App. 3d 159, 167, 845 N.E.2d 773, 781 (2006). As the Supreme Court has explained:

"[Derivative lawsuits] are one of the remedies which equity designed for those situations

-7-

where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights which the corporation has. The stockholders are then allowed to take the initiative and institute the suit which the management should have started had it performed its duty." *Meyer v. Fleming*, 327 U.S. 161, 167, 90 L. Ed. 595, 600, 66 S. Ct. 382, 386 (1946).

See *Brown v. Tenney*, 125 Ill. 2d 348, 355, 532 N.E.2d 230, 232 (1988) (derivative suit is a "device to protect shareholders against abuses by the corporation, its officers and directors, and is a vehicle to insure corporate accountability").

Necessarily, therefore, the general rule under these cases is that shareholders may bring derivative suits against the third parties who have allegedly wronged the corporation. A derivative suit technically consists of two causes of action: one against the board of directors for failing to sue, and the other based upon the corporate right that was allegedly violated. *Brown*, 125 Ill. 2d at 355, 532 N.E.2d at 232. Because of this, a corporation is a necessary party to a derivative suit on its behalf. *Meyer*, 327 U.S. at 167, 90 L. Ed. at 600, 66 S. Ct. at 386; *Metropolitan Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp.*, 85 Ill. 2d 458, 472, 426 N.E.2d 860, 865-66 (1981). However, the corporation "is only nominally a defendant, since any judgment obtained against the real defendant runs in its favor." *Meyer*, 327 U.S. at 167, 90 L. Ed. at 600, 66 S. Ct. at 386.

Defendants effectively concede in their brief that unit owners, such as plaintiffs, may bring derivative suits on behalf of a condominium association against the current board of directors. Nor could they contend otherwise, given the case law in support of that proposition.

No. 07-2927

*Board of Directors of Kennelly Square Condominium Ass'n v. Mob Ventures, L.L.C.*, 359 Ill. App. 3d 991, 995, 836 N.E.2d 115 (2005) (stating that unit owners "have the remedy of filing a derivative action against the Board if the Board fails to assert their claim against [third-party] defendants"); *Poulet v. H.F.O., LLC*, 353 Ill. App. 3d 82, 100, 817 N.E.2d 1054, 1068 (2004) (same). However, defendants question whether this power to sue derivatively extends to suits against third parties, such as the former members of the board of directors who are the defendants in the case at bar.

Courts in other jurisdictions have answered this question in the affirmative. In the New Jersey decision of *Siller v. Hartz Mountain Associates*, 93 N.J. 370, 461 A.2d 568 (1983), the Supreme Court of New Jersey dealt with the issue of who has the right to sue for injuries allegedly done to commonly owned condominium elements. The *Siller* court noted that New Jersey's Condominium Act states that the association has responsibility over the maintenance, repair, and replacement of such common elements. Thus, the *Siller* court held that unit owners could not pursue individual claims for damage to these elements: "A sensible reading of the statute leads to the conclusion that such causes of action belong exclusively to the association." *Siller*, 93 N.J. at 381, 461 A.2d at 573-74. However, the court then went on to state:

"This is not to say that a unit owner may not act on a common element claim upon the association's failure to do so. In that event the unit owner's claim should be considered derivative in nature and the association must be named as a party. ***

The unit owner may also sue the developer on behalf of the association irrespective of its governing board's willingness to sue during the period of time that the

-9-

association remains under the control of the developer." *Siller*, 93 N.J. at 381, 461 A.2d at 574.

Thus, although the right to sue belongs exclusively to the association, unit owners do not usurp that right by bringing derivative suits on the association's behalf against third parties such as developers; rather, they are simply acting as the arms of the association to exercise that associational right.

The Supreme Judicial Court of Massachusetts reached a similar conclusion in *Cigal v. Leader Development Corp.*, 408 Mass. 212, 557 N.E.2d 1119 (1990). The *Cigal* court found that unit owners lacked standing to pursue individual claims against a subcontractor for defects in the construction of commonly owned areas, as such claims were the exclusive province of the association. *Cigal*, 408 Mass. at 217-18, 557 N.E.2d at 1122, citing *Siller*, 93 N.J. 370, 461 A.2d 568. Instead, the *Cigal* court stated that the unit owners' proper recourse was to bring a derivative suit on behalf of the association against the subcontractor, and on remand it instructed that the unit owners be given leave to amend their complaint to proceed on a derivative basis. *Cigal*, 408 Mass. at 218 n.10, 557 N.E.2d at 1123 n.10. The court noted that a derivative suit against this third party was appropriate in light of the unit owners' allegation that they brought suit only after repeated efforts to convince the association to pursue the matter on its own. *Cigal*, 408 Mass. at 218 n.10, 557 N.E.2d at 1123 n.10.

Defendants nevertheless argue that, under Illinois law, this power to sue derivatively is limited and restricted to derivative actions against current board members. However, such a limitation does not withstand logical scrutiny. In bringing a derivative suit on behalf of an

association, the plaintiff effectively steps into the shoes of the association. *Lower v. Lanark Mutual Fire Insurance Co.*, 151 Ill. App. 3d 471, 473, 502 N.E.2d 838, 840 (1986). Once unit owners are permitted to step into an association's shoes, it follows that they ought to be able to sue any party that the association itself might sue. And there is no debate that the association would have the power to bring suit against third parties. Thus, once the door has been opened to permit derivative suits against current board members, the distinction defendants attempt to draw with respect to derivative suits against third parties is inherently inconsistent and untenable.

Defendants' reliance on *Poulet* and *Kennelly Square* in support of their contention is misplaced: *Poulet* and *Kennelly Square* do not abrogate the general rule of corporate law that would permit unit owners to bring derivative actions on behalf of the association against third parties. Indeed, the reasoning of *Siller* and *Cigal* regarding the power of unit owners to bring derivative suits against third parties has been explicitly endorsed by the court in *Poulet*, and thus by extension the court in *Kennelly Square*, which follows the *Poulet* decision.

In *Poulet*, condominium owners brought suit against the condominium developer and various officials, alleging (in relevant part) that these defendants committed conversion and constructive fraud by mishandling funds in the association's bank account. *Poulet*, 353 Ill. App. 3d at 85, 87, 817 N.E.2d at 1057-58. The suit was not a derivative lawsuit, but rather a suit brought individually and on behalf of all current and former unit owners. *Poulet*, 353 Ill. App. 3d at 85, 87, 817 N.E.2d at 1057-58. The court found that plaintiffs lacked standing to bring such a suit. *Poulet*, 353 Ill. App. 3d at 99, 817 N.E.2d at 1067. It first examined the law in other jurisdictions, discussing the *Siller* and *Cigal* cases in detail and quoting the excerpts that are

quoted above. It then found that Illinois law was consistent with the law in those states regarding the association's right to sue: "the [Condo] Act here charges the Association with the primary responsibility to protect the interests in the Association's funds," said the court. Accordingly, the court held that "causes of action for conversion and common law constructive fraud relating to an association's account belong exclusively to that association." *Poulet*, 353 Ill. App. 3d at 99, 817 N.E.2d at 1067. The court then noted that its holding did not leave unit owners without legal recourse:

> "[O]ur finding in this case does not bar individual unit owners from obtaining relief in the event that the Association fails to take action against the third parties. In that event, as noted in *Siller*, individual unit owners could protect any interest they have in the Association's funds by bringing a derivative action against the Association." *Poulet*, 353 Ill. App. 3d at 100, 817 N.E.2d at 1068.

The holding of *Poulet* was subsequently affirmed in *Kennelly Square.* The facts of *Kennelly Square* are similar: condominium owners sought to intervene in a trespass complaint that the association's board of directors had filed against a third party. *Kennelly Square*, 359 Ill. App. 3d at 994, 836 N.E.2d at 116. Relying on the *Poulet* decision, the *Kennelly Square* court found that the condominium owners lacked standing to bring such a claim on an individual basis, because the alleged trespass concerned common areas owned jointly by all owners. *Kennelly Square*, 359 Ill. App. 3d at 995-96, 836 N.E.2d at 119. The court noted that "[t]he owners have the remedy of filing a derivative action against the Board if the Board fails to assert their claim against the defendants." *Kennelly Square*, 359 Ill. App. 3d at 995, 836 N.E.2d at 120.

Defendants would have us conclude from these cases that, because the Association has the exclusive right to sue third parties such as the director defendants, plaintiffs lack the power to bring the instant suit. However, this stance misconstrues the nature of derivative suits. As discussed above, derivative lawsuits are brought on behalf of the corporation (*Caparos*, 364 Ill. App. 3d at 167), and any judgment obtained runs in favor of the corporation, not the individuals bringing the derivative suit. *Meyer*, 327 U.S. at 167, 90 L. Ed. at 600, 66 S. Ct. at 386. Thus, while defendants are correct in saying that suing the director defendants for their alleged misconduct is an exclusive right of the Association, that right is not usurped by stepping into the shoes of the Association to bring a derivative suit on its behalf. See *Lower*, 151 Ill. App. 3d at 473, 502 N.E.2d at 840 (in bringing a derivative suit, a shareholder "step[s] into the corporation's shoes and seek[s] its right of restitution that he could not demand on his own"). Nor are plaintiffs usurping any right of the board of directors, since the *Poulet* court makes clear that it is the association that holds the power of suit, not the directors, who merely serve under the Condo Act as the arms of the association in bringing suit on its behalf. *Poulet*, 353 Ill. App. 3d at 99, 817 N.E.2d at 1067 (cause of action for torts related to associational funds "belong[s] exclusively to that association").

Defendants also seek to find a restriction on the scope of derivative suits in the specific language used by the *Poulet* and *Kennelly Square* courts. They argue that when the court in *Poulet* states that "individual unit owners could protect any interest they have in the Association's funds by bringing a derivative action against the Association" (*Poulet*, 353 Ill. App. 3d at 100, 817 N.E.2d at 1068), this should be read as language of restriction. They would

have us interpret this to mean that unit owners may *only* protect their interests by bringing a derivative action against their association, rather than being able to protect their interests in other means, such as bringing a derivative action against third parties. They attempt to impose a similar meaning on the parallel language in *Kennelly Square* where the court states that unit owners "have the remedy of filing a derivative action against the Board." *Kennelly Square*, 359 Ill. App. 3d at 996, 836 N.E.2d at 120.

However, we find such an interpretation to be unwarranted in context, for several reasons. First, the quoted sections themselves do not contain any indication that they are to be read restrictively; the fact that unit owners may bring derivative actions against their association does not necessarily preclude any other kind of derivative action. Furthermore, neither *Poulet* nor *Kennelly Square* dealt with derivative lawsuits brought on behalf of condominium associations. Rather, their concern was lawsuits brought by unit owners in their individual capacity. *Poulet*, 353 Ill. App. 3d at 85, 87, 817 N.E.2d at 1057-58; *Kennelly Square*, 359 Ill. App. 3d at 991, 836 N.E.2d at 116. Accordingly, it makes little sense to read these cases as comprehensive guidebooks as to when derivative suits may and may not be brought by unit owners. The language in both of these decisions merely ameliorates the harshness of their holdings by pointing to a non-exclusive method of relief that is still permitted.

This position is corroborated by the *Poulet* court's acceptance of the *Siller* and *Cigal* cases. By adopting the reasoning of these courts (*Poulet*, 353 Ill. App. 3d at 99, 817 N.E.2d at 1067), the *Poulet* court implicitly adopts their view of derivative suits as well: namely, that unit owners may sue third parties derivatively on behalf of their association, and that there is no

conflict between this and the fact that the association has exclusive rights over lawsuits regarding harm to association property. Indeed, as noted previously, the *Poulet* court quotes excerpts from *Siller* and *Cigal* which clearly endorse the authority of unit owners to bring derivative lawsuits against third parties. *Poulet*, 353 Ill. App. 3d at 94, 98, 817 N.E.2d at 1063, 66. Nor do the *Poulet* or *Kennelly Square* courts make any effort to draw a distinction between the condominium statutes in effect in those states and the Condo Act with respect to the issue of derivative suits. Thus, for this reason as well, such derivative suits against third parties are also permissible under Illinois law.

Defendants next contend that their desired limitation on the scope of derivative lawsuits is necessary under the language of the Condo Act. We disagree.

With regard to lawsuits brought on behalf of a condominium association, the Condo Act states:

> "The board of managers [of a condominium association] shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b) (West 2002).

This subsection empowers the association to act in the interest of its unit owners with respect to common elements, and it also empowers the board to direct the activities of the association in that regard, in a manner similar to the empowerment of a board of directors to act on behalf of a corporation. See *Borgsmiller v. Burroughs*, 187 Ill. App. 3d 1, 7, 542 N.E.2d 1281, 1286 (1989) (corporate directors have the power to bring suit in the name of the corporation for violation of

its rights). This does not purport to bar unit owners from also acting on behalf of the association against third parties in the manner described by the *Siller* and *Cigal* courts as cited with approval in *Poulet*. *Poulet*, 353 Ill. App. 3d at 94, 98, 817 N.E.2d at 1063, 1066.

Thus, defendants have provided no valid reasons for us to deviate from the general body of corporate law regarding derivative lawsuits which leads to the conclusion that condominium owners may bring such lawsuits against third parties on behalf of their condominium associations. See *Meyer*, 327 U.S. at 167, 90 L. Ed. at 600, 66 S. Ct. at 386; *Caparos*, 364 Ill. App. 3d at 167, 845 N.E.2d at 781. On the contrary, the cases of *Poulet* and *Kennelly Square* support the preexisting rule under general corporate law that derivative lawsuits against third parties are a permissible vehicle for unit owners, such as plaintiffs in the instant case, who are dissatisfied with the board of directors' decision not to bring suit on behalf of the association.

Defendants' final contention regarding plaintiffs' derivative claim is that under *Goldberg v. Michael*, 328 Ill. App. 3d 593, 766 N.E.2d 246 (2002), unit owners may not bring a derivative lawsuit against third parties where the current board of directors has refused a demand to bring suit. In *Goldberg*, a condominium association's board of directors accused a group of former directors of breaching their fiduciary duties to the association in connection with a foreclosure action. The association was able to execute settlement agreements with these former directors. Subsequently, a group of unit owners filed suit derivatively on behalf of the association against the former directors for substantially the same grievance. *Goldberg*, 328 Ill. App. 3d at 596-97, 766 N.E.2d at 249. The court found that the unit owners could not bring such a suit, explaining,

"There are no allegations that the board in settling with defendants abused its discretion,

was grossly negligent, or acted in bad faith or fraudulently. Thus, plaintiffs cannot pursue litigation derivatively on behalf of the Association where the board voted not to proceed with litigation." *Goldberg*, 328 Ill. App. 3d at 599, 766 N.E.2d at 251, citing *Miller v. Thomas*, 275 Ill. App. 3d 779, 787, 656 N.E.2d 89, 94 (1995).

Defendants argue that, just as the *Goldberg* plaintiffs could not use a derivative lawsuit to override the board's decision not to pursue the action, the plaintiffs in the instant case may not do so either. We disagree.

*Goldberg* does not stand for the proposition that unit owners may never bring derivative suits against third parties to redress wrongs allegedly done to the association. Rather, as the case law cited by the *Goldberg* court makes clear, for unit owners to bring a derivative suit in the wake of a decision by the board not to sue, they must allege that the board's refusal to sue was not a valid exercise of the directors' business judgment.[1] *Miller*, 275 Ill. App. 3d at 787-88, 656 N.E.2d at 94. In *Goldberg*, the unit owners failed to make any such allegations. *Goldberg*, 328 Ill. App. 3d at 599, 766 N.E.2d at 251. Therefore, it was appropriate in that case for the court to grant deference to the board's decision not to pursue suit and dismiss the unit owners' action. See *Miller*, 275 Ill. App. 3d at 787, 656 N.E.2d at 94. By contrast, in the case at hand, plaintiffs alleged in their complaint that the current board's failure to bring suit against the director defendants was a violation of the business judgment rule, insofar as it stemmed from the current board's failure to obtain and consider sufficient information to make an informed decision about

---

[1] The application of the business judgment rule to this case shall be discussed in greater detail below.

whether or not to bring suit. See *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1015, 636 N.E.2d 616, 621 (1993) (directors must inform themselves of material facts necessary to exercise their judgment in order for their decisions to be accorded deference under the business judgment rule). Therefore, *Goldberg* is inapposite and presents no bar to the plaintiffs' derivative claim in the instant case.

B. Direct Claim

Plaintiffs further argue that their allegations of loss of value of their units are sufficient to sustain a claim on an individual basis against the director defendants.

As discussed above, the derivative lawsuit is the standard vehicle by which shareholders may seek relief for wrongs done to a corporation, and a shareholder may not bring suit in an individual capacity to obtain redress on behalf of the corporation for wrongs done to the corporation. *Poulet*, 353 Ill. App. 3d at 99, 817 N.E.2d at 1067; *Kennelly Square*, 359 Ill. App. 3d at 995, 836 N.E.2d at 119. However, a shareholder who has a direct and personal interest in a cause of action may bring suit in an individual capacity even if the corporation's rights are also implicated. *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58, 62, 765 N.E.2d 56, 60 (2002). However, the shareholder must allege something more than wrong to the corporate body. *Goldberg*, 328 Ill. App. 3d at 599, 766 N.E.2d at 251 (stating that "[t]he alleged primary wrong is to the corporate body, and because plaintiffs have experienced no direct harm, they have no right to sue individually"). Rather, for a shareholder to have standing to bring an individual claim, the shareholder must allege an injury that is "separate and distinct from that suffered by other shareholders," or an injury that involves a contractual right that exists independently of any

corporate right. *Caparos*, 364 Ill. App. 3d at 167, 845 N.E.2d at 781. It is the first category, requiring a "separate and distinct" injury, that plaintiffs argue their individual claims fall into.

It is not automatically fatal to plaintiffs' claim that the foundational allegations giving rise to their individual claim are the same as the allegations giving rise to their derivative claim on behalf of the Association. In this regard, the facts of *Sterling* are illustrative. In *Sterling*, plaintiff was a shareholder of Sterling Radio Stations, Inc. (SRS), and he personally guaranteed a promissory note issued by SRS. When SRS defaulted on the promissory note, the holders of the note sued both SRS and plaintiff, who were found jointly and severally liable for damages. Plaintiff then brought a legal malpractice suit against his counsel in that prior case. The *Sterling* court found that he had standing to do so, reasoning that plaintiff had been personally liable in the prior action. "In this lawsuit," stated the court, "[plaintiff] is not suing defendants to recover damages for a harm done to SRS, but is instead seeking to recover for a harm done to him directly and, thus, has standing to bring this suit in his individual capacity." *Sterling*, 328 Ill. App. 3d at 62, 765 N.E.2d at 60. Thus, as long as the injury alleged is directly to plaintiffs and not merely to the Association, it is sufficient to establish standing under *Sterling*.

Defendants raise two main arguments in support of their contention that plaintiffs have not satisfied the requirements for standing on an individual basis. First, they argue that the damages – namely, lowered property values – are not separate and distinct. Second, they argue that the damages are not direct, but merely an indirect result of the harms done to the Association by Larson. While defendants' first contention is not technically correct, their second contention is persuasive.

With regard to the first argument: the mere fact that the same kind of damage is alleged for multiple unit owners does not preclude the damage from being separate and distinct for each unit owner. Ownership of individual units is separate. *Poulet*, 353 Ill. App. 3d at 98, 817 N.E.2d at 1067 (condo owner "has a fee simple title, from which he enjoys exclusive ownership of his individual unit, and retains as a tenant in common an undivided interest in the common areas"). Thus, if the value of each unit in the group goes down, each individual owner suffers a separate injury. One neighbor's injury – the loss of value to his unit – is separate from another neighbor's injury. Illinois law does not require the injury to be unique, merely separate and distinct. *Mann v. Kemper Financial Co.*, 247 Ill. App. 3d 966, 977, 618 N.E.2d 317, 325 (1992) ("A plaintiff shareholder's injury may not be unique to that particular shareholder, but a plaintiff's cause of action could still be individual instead of derivative"); see *Caparos*, 364 Ill. App. 3d at 167, 845 N.E.2d at 781 (no uniqueness requirement).

With regard to defendants' second argument about the indirect nature of the harm: The general rule is:

> " 'A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue.' " *Mann*, 247 Ill. App. 3d at 975-76, 618 N.E.2d at

325, quoting *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970). See *Cashman v. Coopers & Lybrand*, 251 Ill. App. 3d 730, 736, 623 N.E.2d 907, 911 (1993) (shareholders lacked standing to bring direct suit against accounting firm whose alleged negligence led to a decline in stock values; court reasoned that "plaintiffs allege an injury to the corporation which affects them only indirectly"); *Small v. Sussman*, 306 Ill. App. 3d 639, 643-44, 713 N.E.2d 1216, 1220 (1999) (alleged diversion of funds by majority shareholder was insufficient to allow minority shareholder to bring suit against him on an individual basis because "[s]uch a diversion would affect a company's performance generally, and would affect all shareholders only indirectly").

Defendants argue by analogy that an owner of a condominium unit has no standing to maintain an action in his own right where the alleged injury is inflicted upon the condominium association and the only injury to the unit owner is the indirect harm that consists of the lessening of value of his unit. Indeed, the situation in the present case is far closer to the situation described in *Mann*, where there is no standing, than the situation described in *Sterling*, which plaintiffs seek to rely upon: In *Sterling*, the individual plaintiff alleged direct loss as a result of counsel's malpractice, in that he was personally liable upon the promissory note and thus sustained expense from the loss of the lawsuit. By contrast, in the present case, the alleged damage to plaintiffs comes only as a byproduct of the damage to the Association as a whole; in other words, this is a situation, as described in *Mann*, where "the primary wrong is to the corporate body" and it is not individually actionable. *Mann*, 247 Ill. App. 3d at 975-76, 618 N.E.2d at 325; see *Cashman*, 251 Ill. App. 3d at 736, 623 N.E.2d at 911; *Small*, 306 Ill. App. 3d

No. 07-2927

at 643-44, 713 N.E.2d at 1220. Thus, we find that plaintiffs lack standing to pursue their suit in their individual capacities.

C.  Breach of Fiduciary Duty

Defendants next contend that, regardless of whether suit is brought individually or derivatively, plaintiffs have substantively failed to state a cause of action for breach of fiduciary duty, since plaintiffs have not alleged that defendants acted contrary to the Association's best interest.  Plaintiffs argue that such allegations are implicit in their complaint, and in any event, that it is sufficient for them to allege that the director defendants have breached the Association's bylaws and the Condo Act, which plaintiffs have in fact alleged.

A fiduciary relationship is a relationship in which "there is special confidence in one who, in equity and good conscience, is bound to act in good faith with due regard to the interests of the other." *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership*, 307 Ill. App. 3d 614, 622, 717 N.E.2d 429, 436 (1999).  Condominium board directors owe a fiduciary duty to members of their association.  *Weathersfield*, 307 Ill. App. 3d at 622, 717 N.E.2d at 436.

As part of this fiduciary duty, directors are required to comply with procedures in the condominium bylaws as well as the strictures of the Condo Act.  *Weathersfield*, 307 Ill. App. 3d at 622, 717 N.E.2d at 436; *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 534, 449 N.E.2d 151, 157 (1983); *Litvak v. 155 Harbor Drive Condominium Ass'n, Inc.*, 244 Ill. App. 3d 220, 226, 614 N.E.2d 190, 195 (1993).  The facts of *Wolinsky* are illustrative: the *Wolinsky* plaintiff sued the board of directors of her condominium association, alleging that the directors violated their

-22-

fiduciary duty by exercising their right of first refusal to prevent her from purchasing a unit without first obtaining a vote of approval as required by the condominium bylaws. *Wolinsky*, 114 Ill. App. 3d at 529-30, 449 N.E.2d at 154. The trial court dismissed her complaint. On appeal, the court reversed, finding that her allegations that she was a member of the condominium association and that the board had violated the association's bylaws were sufficient to state a cause of action for breach of fiduciary duty. *Wolinsky*, 114 Ill. App. 3d at 534, 449 N.E.2d at 154. See also *Litvak*, 244 Ill. App. 3d at 226, 614 N.E.2d at 195 (unit owner's allegation that board of directors violated the Condo Act was sufficient to defeat condominium association's motion for summary judgment absent a determination that the board "*strictly* complied" (emphasis in original) with the Act and the bylaws).

Similarly, in the case at hand, plaintiffs allege that the director defendants have violated the Condo Act and the Association's bylaws by failing to purchase the required insurance to protect the Association against fraud such as was allegedly committed by Larson. Under *Wolinsky* and *Litvak*, such allegations constitute a valid cause of action for breach of fiduciary duty. See *Wolinsky*, 114 Ill. App. 3d at 534, 449 N.E.2d at 157; *Litvak*, 244 Ill. App. 3d at 226, 614 N.E.2d at 195.

Defendants nonetheless contend that plaintiffs have failed to state a cause of action for breach of fiduciary duty because they did not specifically allege that the board failed to act in the Association's best interest, which they argue is necessary under *Stamp*, 263 Ill. App. 3d 1010, 636 N.E.2d 616. They cite the following language from *Stamp*: "Nor does the complaint allege that defendants acted other than in the best interest of the corporation, a fact necessary to recover

for breach of fiduciary duty." *Stamp*, 263 Ill. App. 3d at 1017, 636 N.E.2d at 622-23. They cite no other law in support of this proposition.

In context, the language that defendants quote from *Stamp* does not bar the instant suit. Although *Stamp* was an action for breach of fiduciary duty against former directors of a corporation, the allegations that the court was considering when it made the above-quoted statement did not involve overt violations of any laws or bylaws; rather, they involved discretionary decisions which were allegedly harmful to the company. *Stamp*, 263 Ill. App. 3d at 1016-17, 636 N.E.2d at 622-23 (court is dealing with subparagraphs (a) through (p) of the complaint, in which no acts amounting to a violation of law are alleged, but only errors in judgment). Where only discretionary decisions are at issue, then, as stated in *Stamp*, it is necessary to allege that corporate officers were not acting in the best interest of the corporation in order to state a cause of action for breach of fiduciary duty. *Stamp*, 263 Ill. App. 3d at 1017, 636 N.E.2d at 623. However, the *Stamp* court does not purport to contravene the general principle that where there is a violation of a statute or of organizational bylaws that has caused detriment to the organization, that also constitutes a breach of fiduciary duty. *Wolinsky*, 114 Ill. App. 3d at 534, 449 N.E.2d at 157; *Litvak*, 244 Ill. App. 3d at 226, 614 N.E.2d at 195. Indeed, the *Stamp* court specifically notes that there are no allegations of illegal behavior with respect to the decisions at issue. *Stamp*, 263 Ill. App. 3d at 1017, 636 N.E.2d at 623. By contrast, plaintiffs in the instant case have made such claims in their complaint and have therefore sufficiently alleged a violation of fiduciary duty on the part of the director defendants to survive a motion to dismiss on the pleadings.

D.  Business Judgment Rule

Likewise, defendants further contend that they are substantively protected from liability by the business judgment rule.  Plaintiffs argue that defendants, as former directors, cannot assert the business judgment rule in their defense to bar the current suit.  Plaintiffs also contend that the business judgment rule does not apply where defendants have committed a breach of care, as is alleged in the complaint.

Under the business judgment rule, "[a]bsent evidence of bad faith, fraud, illegality or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors."  *Fields v. Sax*, 123 Ill. App. 3d 460, 467, 462 N.E.2d 983, 988 (1984); see *Stamp*, 263 Ill. App. 3d at 1015, 636 N.E.2d at 620.  The purpose of this rule is to protect directors who have been diligent and careful in performing their duties from being subjected to liability from honest mistakes of judgment.  *Stamp*, 263 Ill. App. 3d at 1015, 636 N.E.2d at 621.  However, it is a prerequisite to the application of the business judgment rule that the directors exercise due care in carrying out their corporate duties.  *Stamp*, 263 Ill. App. 3d at 1016, 636 N.E.2d at 621.  If directors fail to exercise due care, then they may not use the business judgment rule as a shield for their conduct.  *Stamp*, 263 Ill. App. 3d at 1016; *Lower v. Lanark Mutual Fire Insurance Co.*, 114 Ill. App. 3d 462, 467, 448 N.E.2d 940, 945 (1983) (directors must be diligent and careful in carrying out their duties to earn the protection of the business judgment rule); *Ferris Elevator Co. v. Neffco, Inc.*, 285 Ill. App. 3d 350, 354, 674 N.E.2d 449, 452 (1996) (evidence of directors' lack of due care sufficient to overcome the business judgment rule).

One component of due care is that directors must inform themselves of material facts

necessary for them to properly exercise their business judgment. *Stamp*, 263 Ill. App. 3d at 1015, 636 N.E.2d at 621, citing *Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1265, 256 Cal. Rptr. 702, 711 (1989) (directors "may not close their eyes to what is going on about them in corporate business, and must in appropriate circumstances make such reasonable inquiry as an ordinarily prudent person under similar circumstances"). Thus, the business judgment rule is defeated where directors act without "becoming sufficiently informed to make an independent business decision." *Ferris*, 285 Ill. App. 3d at 354, 674 N.E.2d at 452.

Plaintiffs' first contention is that, as the director defendants are only former directors, not current directors, they may not assert the business judgment rule in their favor. Plaintiffs argue that only the Association itself has the power to raise the business judgment rule as a defense with regard to the Association's decision not to bring suit against the defendants. However, this contention is a *non sequitur*: the former directors are not seeking the protection of the business judgment rule with regard to the current board's decision not to bring suit against them. Rather, these defendants seek it with regard to the actions they took during their tenure as directors. Contrary to plaintiffs' contention, they are not trying to assert the rule on behalf of the corporation, but on their own behalf. The fact that defendants are no longer serving on the board of directors does not preclude them from raising the business judgment rule on their own behalf for the things they did while they were still directors. See *Miller*, 275 Ill. App. 3d at 788-89, 656 N.E.2d at 95 (shareholder derivative suit against current and former corporate directors dismissed in its entirety because plaintiffs failed to allege facts that would prevent application of the business judgment rule).

Plaintiffs further contend that the business judgment rule is unavailable as a shield for the director defendants because they have breached their duty of due care, as evidenced by their alleged failure to obtain adequate information in order to make a reasoned business judgment regarding the Larson situation, as well as their alleged failure to comply with statutory insurance provisions.

Defendants deny this contention, relying on the *Stamp* case. In *Stamp*, plaintiff brought suit against directors of a corporation for negligence and breach of fiduciary duty, alleging in relevant part that the directors failed to oversee the performance of corporate agents, wrongfully delegated responsibility, and failed to properly manage and supervise their subordinates. *Stamp*, 263 Ill. App. 3d at 1017, 636 N.E.2d 622. The court found that these allegations were insufficient to defeat the business judgment rule, stating:

> "[T]hese allegations, as currently framed, attack no more than the defendants' actual exercise of their business judgement and are consequently within the protected parameters of the business judgment rule. Plaintiff has not alleged that any such failure was by reason of inexcusable unawareness or inattention or lack of good faith on part of the directors." *Stamp*, 263 Ill. App. 3d at 1017, 636 N.E.2d 622.

By contrast, as noted earlier, the instant plaintiffs allege in their complaint that none of the director defendants reviewed any of the Association's monthly bank statements, which would have enabled them to uncover Larson's embezzlement. Plaintiffs further allege that the director defendants never obtained advice of counsel to learn about their duties regarding insurance coverage, Association finances, or supervision of key personnel. These allegations, when viewed

-27-

in the light most favorable to plaintiffs (*Casualty*, 323 Ill. App. 3d at 1033, 753 N.E.2d at 374), could potentially support a finding that the director defendants breached their duty of due care. Furthermore, these allegations are distinguishable from those in *Stamp*: plaintiffs are not merely saying that defendants misjudged the proper safeguards to be taken, as was the case in *Stamp*, but that they failed to obtain the necessary information to make a rational business judgment at all regarding those safeguards. The "inexcusable unawareness or inattention" that was not present in *Stamp* (263 Ill. App. 3d at 1017, 636 N.E.2d at 622) is alleged here in the present case.

In addition, plaintiffs allege that the director defendants violated the Condo Act through their failure to purchase proper insurance to protect Association funds. Illegality is one factor that can render directors unable to avail themselves of the protection of the business judgment rule. *Fields*, 123 Ill. App. 3d at 467, 462 N.E.2d at 988 . This is consistent with the general rule of tort law that violation of a statute designed to protect property is prima facie evidence of negligence, which, as discussed above, renders the business judgment rule inapplicable. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434, 581 N.E.2d 656, 661 (1991), citing *Barthel v. Illinois Central Gulf R.R. Co.*, 74 Ill. 2d 213, 219, 384 N.E.2d 323, 326 (1978). Therefore, plaintiffs have sufficiently alleged a breach of due care, such that the business judgment rule does not apply to bar plaintiffs' suit at the pleading stage. See *Stamp*, 263 Ill. App. 3d at 1015, 636 N.E.2d at 620; *Ferris*, 285 Ill. App. 3d at 354, 674 N.E.2d at 452.

E.  Election of Remedies

Finally, defendants contend that the doctrine of election of remedies precludes plaintiffs from seeking relief from them, as plaintiffs already elected to seek relief in their prior suit against

the bank that held the Association funds at issue for its participation in the embezzlement. However, defendants have not shown these actions to be mutually exclusive, nor do they provide any law in their brief in support of this proposition. Accordingly, the argument is waived under Supreme Court Rule 341(h)(7), which requires that arguments in an appellate brief be supported by citation to legal authority or be subject to waiver. 210 Ill. 2d R. 341(h)(7); see *People v. Ward*, 215 Ill. 2d 317, 332, 830 N.E.2d 556, 564 (2005) ("point raised in a brief but not supported by citation to relevant authority *** is therefore forfeited"); *Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61, 78, 704 N.E.2d 830, 842 (1998) (finding that defendants waived an argument by failing to provide legal support).

Therefore, we affirm the trial court's dismissal of plaintiffs' count II, the individual count, but reverse its dismissal of plaintiffs' count I, the derivative count.

Affirmed in part and reversed in part; cause remanded for proceedings not inconsistent with this opinion.

O'MALLEY, P.J., and McBRIDE, J., concur.

| | REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case) |
|---|---|
| Please use the following form | Evelyn Davis, John F. Bukacek, Richard Abel, Teodora M. Bermudez, Maximo C. Bermudez, Albert Bowen, Daniel Gilmour, Ewa Grigar, Peter Grigar, N. Chung Kang, Agata Zawierta, and Jan Zawierta, Individually and on Behalf of Granville Beach Condominium Association, Inc.,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>Joe Dyson, Paula Failla, David Hamilton, Michael Jones, Lillian Lapalio, Augustine Marron, Mary Ann Mayfield, Tim Patula, David Siegel, and Anna Skalka,<br><br>Defendants-Appellees<br><br>(Granville Beach Condominium Association, Inc.,<br><br>Defendant). |
| Docket No.<br><br>COURT<br><br><br><br>Opinion Filed | No. <u>1-07-2927</u><br><br>Appellate Court of Illinois<br>First District, <u>SIXTH</u> Division<br><br>December 19, 2008<br>(Give month, day and year) |
| <br><br>JUSTICES | JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:<br><br><u>   O'Malley, P.J., and McBride, J.   </u>, concur. |
| APPEAL from the Circuit Court of Cook County; the Hon____ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Appeal from the Circuit Court of Cook County.<br><br>The Hon.  <u>Dennis Burke</u>  Judge Presiding. |
| <br><br><br><br>APPELLANTS:<br>John Doe, of Chicago | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.<br><br><u>APPELLANTS: Lloyd Brooks, The Brooks Law Firm, 15008 Woodlawn Avenue, Dolton, Illinois 60419</u> |
| For APPELLEES, Smith and Smith of Chicago | <u>APPELLEES: Howard L. Lieber and Lindsay E. Dansdill, Fisher Kankaris, P.C., 200 South Wacker Dr., 22nd Floor, Chicago, Illinois 60606</u> |

| | |
|---|---|
| Add attorneys for 3rd party appellants and/or appellees. | |