Sophia Filipiak, Appellee, v. Frank V. Zintak, Appellant, and Leopold Saltiel, Appellee.

Gen. No. 35,518.

Opinion filed January 25, 1932.

Rowe & Bailey, for appellant; Ian P. MacDonald, of counsel.

Leopold Saltiel, *Pro ·Se.*

Mr. Justice McSurely delivered the opinion of the court.

This case involves an attorney's fee of $900 awarded to Leopold Saltiel under paragraph 13 of chapter 13, Cahill's Rev. Statutes which gives attorneys a lien upon claims and causes of action that may be placed in their hands for suit or collection for the amount of any fee which may have been agreed upon between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee for the services rendered.

Sophia Filipiak, hereafter called petitioner, by settlement received from Frank V. Zintak $7,500 on account of an automobile accident from which plaintiff received injuries through the alleged negligence of Zintak. Leopold Saltiel, an attorney at law, practicing in Chicago, claims a lien upon the amount of the settlement. Petitioner asked for an adjudication of the rights of the parties' under Saltiel's claim. Both Zintak and Saltiel filed answers. The chancellor awarded $900 to Saltiel as compensation, and from

this decree Zintak appeals. The petitioner also appears in this court, asserting that she is interested in the $900, and adopts the brief and argument filed by Zintak, the appellant. Both question the allowance.

May 1, 1929, about nine o'clock in the evening, there was a collision between two automobiles, in one of which petitioner was riding. She received severe injuries, including crushed pelvic bones and a cut in the forehead. She was taken at once to a hospital where she remained for six weeks.

On the morning after the accident a Miss Elizabeth Dickinson who, Saltiel says, was the daughter of an old client of his, called at Saltiel's office and told him she thought she might be able to get a lawsuit for him and asked him for a form of contract, which he gave her. Miss Dickinson had not known Miss Filipiak or any of her family, but had apparently heard of the accident. She went at once to the hospital and testifies she obtained the petitioner's signature to this contract. The petitioner testified that she had never seen Miss Dickinson until she saw her in court and denies that she signed the contract or authorized anyone to sign it for her. The sister of petitioner who, as Miss Dickinson testified, was present at the hospital, testified that she had never seen Miss Dickinson at the hospital and testified that the signature on the contract was not that of her sister.

There was convincing evidence that for upwards of a week after the accident the petitioner could not recognize her sisters or speak to them, although they visited her every day, but was constantly moaning and suffering great pain.

The alleged contract is as follows:

"Chicago, Ill.

"I hereby employ Leopold Saltiel, Attorney and Counselor, to represent me as my Attorney in the prosecution of my claim for damages against Frank

V. Zintak, for personal injuries sustained by me on 1st day of May, 1929.

"And I agreed to pay him as compensation for his said services a sum of money equal to $\frac{1}{3}$ of any settlement or; suit of any judgment that may be obtained or recovered out of said claim.

"It is further agreed that Leopold Saltiel will make no settlement of this claim without first obtaining my consent thereto, and I agree. to make no settlement without his knowledge and consent.

"(Signed) Sophie Filepiak.
"Witness: —————
"Accepted by —————."

May 12 following the accident a clerk from Mr. Saltiel's office, as he testified, called at the hospital and spoke to the petitioner and took the statements of two of her friends who were with her in the automobile at the time of the accident. Petitioner denies she ever saw this clerk at the hospital and asserts that the first time she saw him was at her home sometime after June 17. It was asserted on one hand and denied on the other, that Doctor Ricardo, sent by Mr. Saltiel, had called at the hospital to examine petitioner.

Mr. Saltiel's clerk had several talks with a sister of the petitioner and she gave him information and certain bills. About June 17, the clerk called the sister to Mr. Saltiel's office, where she was told by Mr. Saltiel that the insurance company had offered $2,700 to settle the case in full. Mr. Saltiel urged that petitioner settle for this amount. Apparently after this interview the sister of petitioner told Mr. Saltiel that they wanted him to withdraw from the case, to which he replied by letter stating he would hold her strictly to her contract. After this letter of June 17 nothing further was done in the matter by either Mr. Saltiel or his clerk. April 5, 1930, almost a year after the accident, petitioner entered into a contract with another

attorney and through his efforts her claim against Zintak was settled for $7,500.

The signing of the contract with Saltiel by petitioner is earnestly contested, but we are inclined to believe that she signed it, although there is very good reason also to believe that she was at the time suffering from such pain that she would hardly understand its terms.

However this may be, we are of the opinion that fees cannot be allowed for the reason that the contract on its face is invalid. The contract contains the agreement ''that Leopold Saltiel will make no settlement of this claim without first obtaining my consent thereto, and I agree to make no settlement without his knowledge and consent.'' In *North Chicago Street R. Co. v. Ackley,* 171 Ill. 100, a similar contract was under consideration. The court said: ''The law does not discourage settlements in cases for personal injuries. Whether a cause of action exists, and if so, its nature and amount, are facts always involved in uncertainty, and a defendant has a right to buy his peace. The plaintiff has a right to compromise, and avoid the anxiety resulting from a cause pending to which he is a party. Any contract whereby a client is prevented from settling or discontinuing his suit is void, as such agreement would foster and encourage litigation. *Lewis v. Lewis,* 15 Ohio 715; *Elwood v. Wilson,* 21 Iowa 523; *Foster v. Jacks,* 4 Wall. 334; Greenhood on Public Policy, 474; *Boardman v. Thompson,* 25 Iowa 487; *Huber v. Johnson* (Minn.), 70 N. W. Rep. 805.'' This is decisive upon this point.

Even were the contract valid, it is doubtful whether respondent could recover under it for the reason that there was no proof that a proper notice in writing was served upon the party against whom the petitioner had her claim. This is conceded by Mr. Saltiel, who argues that such proof was unnecessary because the service of such notice was admitted in the pleadings.

This admission is predicated upon an allegation in the petition of petitioner to the effect that "she is informed and believes, and so states the fact to be, that the said Leopold Saltiel has filed written notice of his alleged lien arising out of an alleged contract with petitioner, with Frank V. Zintak, who caused the injuries to your petitioner." Zintak, in his answer, referring to this allegation in the petition, "admits the allegations set forth in this paragraph." In *Tuohy v. Chicago & Joliet Electric Ry. Co.,* 200 Ill. App. 446, it was held that in a suit to establish an attorney's lien, the respondent, by admitting the service upon him of the notice, does not admit that the service was made in the manner required by the statute. The notice required by the statute must state the interest which the attorney claims and the service must be personal, and the lien "shall attach . . . from and after the time of service." Cahill's St. ch. 13, ¶ 13.

Other points are argued which it is unnecessary to comment upon, since we hold that the contract, which is the basis of the attorney's claim, is invalid.

The respondent has filed cross errors, claiming that he is entitled under his contract to a larger amount than is given him by the decree. Our view of the invalidity of the contract disposes of this. His claim for compensation must be presented on the basis of *quantum meruit* and not as a lien upon the amount of the settlement.

For the reasons indicated the order allowing the respondent Saltiel a lien for attorney's fees is reversed and the cause is remanded, with directions to enter an order to this effect.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and MATCHETT, J., concur.