# Illinois Official Reports

## Appellate Court

---

**Alliance Property Management, Ltd. v. Forest Villa of Countryside Condominium Ass'n,**
2015 IL App (1st) 150169

---

| | |
|---|---|
| Appellate Court Caption | ALLIANCE PROPERTY MANAGEMENT, LTD., an Illinois Corporation, Plaintiff-Appellant, v. FOREST VILLA OF COUNTRYSIDE CONDOMINIUM ASSOCIATION, an Illinois Not-For-Profit Corporation, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-0169 |
| Filed | December 24, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-M5-114; the Hon. R.W. Hartigan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Andrea Hoeflich, of Law Office of Andrea Hoeflich, of Woodridge, for appellant.<br><br>Gabriella R. Comstock, of Keough & Moody, P.C., of Naperville, for appellee. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Presiding Justice McBride and Justice Howse concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, plaintiff Alliance Property Management (Alliance) appeals the July 31, 2014, order entered by the circuit court of Cook County, which denied Alliance's breach of contract claim. The trial court found that defendant Forest Villa of Countryside Condominium Association (Forest Villa) lacked authority to enter into the contract and therefore it was void. On appeal, Alliance argues that the trial court erred in "rescinding" the contract as a void agreement[1] because the error in its formation was a mutual mistake of fact, which rendered it voidable, not void. Alliance further contends that the contract is enforceable because defendant ratified the contract. In addition, Alliance asserts that defendant waived compliance of its governing documents; liquidated damages are not unjust enrichment; and defendant improperly terminated the agreement. For the following reasons, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3    Forest Villa is a condominium association and not-for-profit corporation located in Countryside, Illinois. It was established pursuant to the Illinois Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2012)) and the General Not for Profit Corporation Act of 1986 (805 ILCS 105/101.01 (West 2012)). The "Declaration of Condominium Ownership" and the bylaws were recorded with the Cook County recorder of deeds on December 15, 1999. Among other provisions regarding the administration of Forest Villa, the bylaws contain a provision which states that the board of directors (Board) has the power "[t]o engage the services of a manager or managing agent who shall manage and operate the Property and the Common Elements thereof, upon such terms and for such compensation and with such authority as the Board may approve provided, that no management agreement may run for a period of beyond two years."

¶ 4    Alliance is a real estate management company owned and operated by Chris Skourlis, a licensed professional property manager. Skourlis has managed condominiums for more than 20 years and at the time this action was commenced, Alliance managed approximately 30 buildings.

¶ 5    On May 27, 2008, Forest Villa, through its Board, entered into a 36-month "Condominium Association Management Agreement" (Agreement) with Alliance. The Agreement was to run from July 15, 2008, to July 15, 2011, and was signed by the officers of Forest Villa's Board at that time: Richard Bartz (president), Margaret Peterson (secretary), and Lynne Mazzone (treasurer). In the Agreement, the Board purported to have full authority to act on behalf of the association and hire Alliance. It provides, "[i]n consideration of the mutual terms, covenants, and conditions set forth herein below, the Board of Directors, having full authority and acting on behalf of the Association, hereby appoints [Alliance] as its, agent, and [Alliance] hereby accepts that appointment in mutual agreement."

¶ 6    Under the Agreement, Forest Villa would compensate Alliance for management services for the condominium. In addition to the day-to-day management of the building, Alliance

_____

[1]A void contract cannot be "rescinded." Rescission is the cancelling of a contract so as to restore the parties to their initial status. *Horwitz v. Sonnenschein Nath & Rosenthal, LLP*, 399 Ill. App. 3d 965, 973 (2010).

was to prepare financial reports, organize general association meetings, oversee Board elections, and perform periodic inspections of the property. The Agreement further provided that Alliance would "guide and assist the Board Members in their fiduciary duties and obligations" and "[a]ssist in the administration of the provisions of the Declaration, Articles of Incorporation, By-laws, Rules and Regulations and policies of the Association." Additionally, Alliance expressly assumed a fiduciary relationship with Forest Villa. The Agreement states:

> "[Alliance] accepts the relationship of trust and confidence established between itself, the Board of Directors, and the Association by virtue of entering in this Agreement. [Alliance] covenants to furnish its best skill and judgment and to cooperate in furthering the interests of the Association.

> [Alliance] agrees to furnish efficient business administration and supervision and to perform its responsibilities, both administrative and advisory, in the best and soundest manner consistent with the best interests of the Association Members and at the direction of the Board for the Association."

¶ 7 The Agreement contained an automatic renewal provision whereby the contract would be renewed "for identical periods of time unless on or before sixty [(60)] days prior to the expiration of the initial term or any renewal period either party shall notify the other in writing that it elects to terminate this agreement." In the event of a material breach by Alliance, Forest Villa could terminate the contract; however, it must provide written notice and allow Alliance 60 days to remedy the breach prior to termination. If these procedures are not followed, Forest Villa would be responsible for liquidated damages in the amount of the management fees for the remaining portion of the contract, which would be immediately due.

¶ 8 On March 2, 2010, prior to the Agreement's automatic renewal, Forest Villa renewed the contract and extended its terms to July 14, 2014. None of the contract terms were changed. Forest Villa's officers at that time, Bartz, Mazzone, and Mary Ann Mobley (treasurer), signed on behalf of Forest Villa and Skourlis signed on behalf of Alliance.

¶ 9 On July 27, 2011, just 13 days into the extended term, Forest Villa sent Alliance a letter informing it of material breaches to the contract. Alliance did not respond to the letter until September 19, 2011, at which time it requested a bill of particulars.

¶ 10 Forest Villa did not send additional evidence of the breaches to Alliance. Instead, it informed Alliance that it was terminating the contract as of October 31, 2011, because Alliance did not make an effort to cure the breaches. Subsequently, Forest Villa sent Alliance a letter explaining that it hired a different management company, which would start management on November 1, 2011.

¶ 11 Alliance filed a complaint against Forest Villa on January 23, 2012. It alleged that Forest Villa breached the Agreement when it terminated the contract without following one of the two cancellation procedures detailed in the Agreement. Specifically, Alliance contended that Forest Villa did not provide evidence of material breaches and did not allow Alliance 60 days to cure any breach before termination or notify it 60 days prior to a renewal period that it would terminate the contract. Forest Villa filed an answer and alleged five affirmative defenses, including that the contract was void *ab initio*, based on misrepresentation, and that it was unconscionable. In addition it alleged that there was a unilateral mistake of fact and, in the alternative, that there was a mutual mistake of fact.

¶ 12      The case proceeded to a bench trial at which several witnesses testified, including Jerome Miceli and Charles Plaia, both officers of Forest Villa at the time of trial, and Richard Bartz and Lynne Mazzone, both officers who signed the initial contract and the renewal. Skourlis, the owner of Alliance, also testified. Margaret Peterson, an officer who signed the initial Agreement, passed away prior to trial, however, her discovery deposition was admitted into evidence.

¶ 13      In her deposition, Margaret Peterson testified that she was employed as an accounting manager for the American Physicians Institute. At the time of the deposition, she was the treasurer for Forest Villa's Board. Prior to March 2013, she had been the Board's secretary from March 2011 to March 2013 and had been a Board member since 2008. She was on the Board when the initial Agreement was signed, but not when it was renewed on March 2, 2010. She testified that she was not aware of the bylaws when she signed the initial Agreement for 36 months.

¶ 14      Miceli testified that he is a unit owner and worked for a trucking company in sales before he retired. He became a member of the Board in 2010. He testified that he did not review the Agreement when he joined the Board. He further testified that although he had seen the declaration, he was "not really" familiar with it or necessarily aware of all the terms of the declaration, the bylaws, the rules, or the Agreement. Miceli stated that he expected Alliance to guide him in making decisions. Charles Plaia, the Board's president at the time of trial, also testified. Plaia was retired, but had been a truck driver and warehouse employee prior to retirement. He became a Board member in March 2011, thus, he was not on the Board when the initial Agreement was executed or when it was renewed. He testified, however, that he reviewed the Agreement and Forest Villa's governing documents prior to becoming president, and was familiar with their terms. He also testified that he expected Alliance would guide him in making decisions.

¶ 15      Skourlis testified that he had been in the property management business for 22 years. He was the sole owner and operator of Alliance, which manages condominiums and townhome associations throughout three counties. Alliance formalizes its relationship with associations through a contract that Skourlis has been using for approximately 20 years. This contract allows an association to choose a 24, 36, or 48 month duration, with decreasing costs as the length of the contract increases. No one has ever alerted Skourlis that the contract violates state laws. Skourlis stated that he believed that Bartz, Mazzone, and Peterson had full authority to enter into the Agreement with Alliance for 36 months. Skourlis met with the Board to review the contract two or three times before the initial Agreement was executed. No one from the Board informed him that the bylaws restricted the Agreement to 24 months.

¶ 16      Skourlis further testified that typically, he would not obtain a copy of an association's bylaws and familiarize himself with them prior to executing management agreements. He did not receive Forest Villa's governing documents until after the Agreement was signed. He explained that, generally, he familiarizes himself with the documents, in particular the rules and regulations, when the Board informs him of the policies they wish to enforce and the policies they wish to ignore. Skourlis testified that Forest Villa made several exceptions to the bylaws during the time that Alliance managed the property. He also testified that it was his role as property manager to guide and assist the Board in their fiduciary duties.

¶ 17      Richard Bartz was a unit owner and the Board's president from 2008 to 2010. He testified that he was on the Board when it initially hired Alliance and when it renewed the Agreement.

Bartz further testified that Alliance provided the bargained-for benefits under the contract and "much more." He also stated that he knew Alliance was there to help guide the Board and assist it in complying with the bylaws. Bartz did not know when he became aware of the 24-month restriction, but Alliance did not inform him of it prior to executing the Agreement or the renewal.

¶ 18 Although Bartz was unaware of the restriction when he signed the initial contract, he believed that the Board had the ability to waive the bylaws. He explained that he "became a member of the CIA [*sic*], and so we would go to workshops, and in one of those workshops they said that a Board, in the best interest of a Condominium Association, could waive some of the things that are in the bylaws." Bartz testified that he did not consult with an attorney regarding the power to waive the bylaws, but there was an attorney at the workshop. He did not believe he was in danger of breaching his fiduciary duty by entering into the 36-month Agreement.

¶ 19 Lynne Mazzone was the Board's secretary when it entered into the Agreement. She was retired but worked part time for the Du Page Senior Citizen Council and served Meals on Wheels. Mazzone testified that she signed the Agreement and at trial acknowledged the provision that states that the Board had full authority to enter into the contract. She further testified that she believed the Board had the authority to enter into the Agreement and that she was acting in the best interests of Forest Villa. She did not feel that her fiduciary duty was in jeopardy. She was not aware that the bylaws restricted contracts for management services to 24 months when she entered into the contract. She testified that she "remember[ed] going to a *** seminar *** and there was a lawyer there speaking and he was explaining *** contracts and Declarations. And at that point [she] heard him say *** read your Declaration, see what it has to say, but you as a Board, you are allowed to make a three-year contract if you think it's to the benefit of the Association." Mazzone further testified that the Board did not have an attorney review the renewal and that they relied on Alliance to help them make sure they were complying with the declaration and bylaws.

¶ 20 Following trial, the court entered judgment in favor of Forest Villa. The court found that the Agreement was void because its terms exceeded the Board's authority. Among other things, the court also found that there was a mutual mistake of fact because all parties were unaware of the 24-month restriction. The court noted, "Mr. Skourlis, owner of Alliance Property, acknowledged he guides the Board, and is an agent and fiduciary of the Board. He should have been aware of the Contract limitations in the By-Laws and he indicated that he was not and it was his fault in doing so." Plaintiff filed a motion to reconsider, which was denied. This appeal followed.

¶ 21                                    ANALYSIS
¶ 22                        Motion for Fees and Costs
¶ 23 As an initial matter we address Forest Villa's motion to recover attorney fees and costs, which we have taken with the case. In its motion, Forest Villa states that it was required to prepare an appendix to the appellate brief because the appendix created by Alliance did not comply with Illinois Supreme Court Rule 342 (eff. Jan. 1, 2005). Forest Villa also contends that Alliance's amended brief violated Illinois Supreme Court Rule 341(h) (eff. Feb. 6, 2013) by failing to: (1) identify the applicable standard of review and cite authority for each issue; (2) include an appropriate statement of facts that is not argumentative; (3) cite the correct

pages in the record; and (4) provide clear, organized, and cohesive legal argument. Forest Villa requests $6,602.55 for attorney fees and $248.03 for costs it incurred in responding to these deficiencies pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). We decline to grant this request. Further, Rule 375 authorizes sanctions when a party *wilfully* violates the Supreme Court Rules. *Id.* Where there is a wilful violation, when appropriate, the court can order a party to pay a fine. We do not find any violation by Alliance to be wilful and, if we did, the rule states that an order "to pay a fine" would be appropriate, not full payment of an opponent's attorney fees. Rule 375 only permits the court to award attorney fees when an appeal is frivolous and not taken in good faith. We do not find that to be the case in the instant appeal as there are legitimate legal issues presented for disposition. Accordingly, Forest Villa's motion for fees and costs is denied.

¶ 24 In its amended brief, Forest Villa raises the same arguments regarding the deficiencies in Alliance's amended brief as were presented in the motion and argues that portions should be stricken. We agree with Forest Villa that Alliance did not fully comply with Rule 341(h) and Rule 342. For example, portions of Alliance's "Statement of Facts" contain improper argument and it cites incorrect page numbers in the record. "[S]upreme court rules pertaining to the content of briefs are mandatory and *** failure to abide by them can result in dismissal of an appeal." *Northbrook Bank & Trust Co. v. 300 Level, Inc.*, 2015 IL App (1st) 142288, ¶ 13. None of the deficiencies in Alliance's brief, however, prevent us from ascertaining the relevant legal issues to be resolved. Thus, we choose to exercise our discretion to consider the merits of Alliance's arguments. *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 293 (1991). Although we decline to strike Alliance's amended brief, we will disregard any offending portions. *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1053 (2005).

¶ 25                                      Board's Authority

¶ 26 The primary issue in this case is whether a provision in the bylaws of a condominium association limiting the Board to entering into contracts for no more than 24 months renders a contract with a third party property management company for 36 months void. The parties do not dispute that the bylaws prohibit the Board from entering into a contract with a management company for more than 24 months. Alliance contends, however, that the limit on duration was a mutual mistake of fact that is not material to the formation of the Agreement. Consequently, the Agreement is voidable, but not void. Because the Agreement was voidable, it was subject to ratification, which was accomplished when Forest Villa accepted the benefits of Alliance's services. Forest Villa responds that because the Board was prohibited from executing a 36-month contract under the bylaws, it lacked authority to enter into the Agreement, and therefore it is void *ab initio* and could not be ratified. The interpretation of a contract to determine whether it is void *ab initio* or voidable is a question of law and is reviewed *de novo*. *Borsellino v. Putnam*, 2011 IL App (1st) 102242, ¶ 103.

¶ 27 The affairs of condominium associations are controlled by the Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 2012)). Pursuant to the Act, a condominium is formed by the recording of a declaration. *Id.* The declaration is "the instrument by which the property is submitted to the provisions of [the] Act." 765 ILCS 605/2(a) (West 2012); *Board of Directors of 175 East Delaware Place Homeowners Ass'n v. Hinojosa*, 287 Ill. App. 3d 886, 889 (1997). In addition to the declaration, the administration of a condominium is governed by the board rules and regulations and the bylaws. The bylaws can either be

contained in the declaration or in a separate document that is recorded with the declaration. *Board of Directors of 175 East Delaware Place Homeowners Ass'n*, 287 Ill. App. 3d at 889-90. The general contents of both the declaration and the bylaws are delineated by the Act. *Id.* at 890. "Condominiums are creatures of statute and, thus, any action taken on behalf of the condominium must be authorized by statute." *Id.* at 889. Where a unit owner's rights must be determined, the Act, the declaration, and the bylaws must be construed as a whole. *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 47 (citing *Carney v. Donley*, 261 Ill. App. 3d 1002 (1994)). This concept similarly applies where the court must determine the scope of a condominium board's authority because the same rights and obligations are implicated.

¶ 28    The administration of the condominium is carried out by the board of directors. 765 ILCS 605/18 (West 2012). According to the Act, the board is comprised of elected unit owners who hold terms of two years, which are staggered so that positions are open each year. *Id.* The members of the board owe a fiduciary duty to the unit owners. 765 ILCS 605/18.4 (West 2012); *Feliciano v. Geneva Terrace Estates Homeowners Ass'n*, 2014 IL App (1st) 130269, ¶ 35. This fiduciary duty requires board members to act in a manner reasonably related to the exercise of that duty, and the failure to do so results in liability for the board and its individual members. *Feliciano*, 2014 IL App (1st) 130269, ¶ 35.

¶ 29    A contract executed by a party that does not have authority is void *ab initio*. *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 164 (2004). When a contract is void *ab initio*, it is as if it never existed. *Id.* A party cannot ratify a void contract by waiving its right to assert a defect. *Id.*; see also *Granzow v. Village of Lyons, Ill.*, 89 F.2d 83, 85 (7th Cir. 1937) (explaining that "[r]atification is impossible if there is no power to contract").

¶ 30    Here, the Act explicitly authorizes a board to hire a management company and does not place a limit on the duration of contracts. 765 ILCS 605/18(a)(5) (West 2012) (stating "the board may engage the services of a manager or managing agent" (*id.*)). Thus, a 36-month contract for management services is not prohibited by the Act. As long as the requirements of the Act are followed, a board may impose additional rules in its declaration and bylaws. *Board of Directors of 175 East Delaware Place Homeowners Ass'n*, 287 Ill. App. 3d at 891; 765 ILCS 605/18.4 (West 2012). These rules can be more restrictive than the Act. *Board of Directors of 175 East Delaware Place Homeowners Ass'n*, 287 Ill. App. 3d at 891; see also *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 128 (upholding a provision in the bylaws requiring notices be mailed as opposed to mailed or delivered as allowed by the Act). Such is the case in the instant appeal, where Forest Villa's bylaws contain a provision that limits the Board's authority to hire management companies to contracts for no more than 24 months.

¶ 31    Nonetheless, Alliance contends that the Board had authority to enter into the contract for 36 months. It maintains that if an action is in the best interests of the condominium association, the Board can deviate from the bylaws. Alliance has cited no legal authority to support this argument. Instead, it relies on the testimony of Forest Villa's former officers that they believed they had authority to waive the bylaws if it was in Forest Villa's best interests. The officers testified that they held this belief, in part, because they attended a seminar presented by an independent organization where an unidentified attorney allegedly instructed them that they had this power. This testimony is not sufficient legal authority to establish the

scope of the Board's authority. We note that whether a board acted in the best interests of its association is a relevant consideration when the governing documents are ambiguous and a board makes a discretionary decision. *Davis v. Dyson*, 387 Ill. App. 3d 676, 693 (2008). In that situation, the court applies the business judgment rule, which considers whether the decision was in the best interests of the association, to determine if the board breached its fiduciary duty. *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1015 (1993). This court in *Davis* explained that the business judgment rule does not apply where there is an overt violation to the bylaws. *Davis*, 387 Ill. App. 3d at 693. Here, the plain language of the bylaws is clear.

¶ 32    Forest Villa points out that, contrary to Alliance's contention, the Board is obligated to strictly comply with the bylaws. In support, Forest Villa cites *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290. In *Palm*, this court held that, among other things, the board was not authorized to hold meetings closed to the general association, vote by email, enter into contracts without approval by vote of the board, or fail to vote on litigation matters because these actions violated the declaration, the Act, and the Illinois General Not for Profit Corporation Act. *Id.* ¶ 1 (citing 805 ILCS 105/101.01 (West 2004)). Additionally, the court found that the board's failure to mail notice of association meetings, which violated the declaration but not the Act, was unauthorized and a breach of its fiduciary duty. *Id.* ¶ 128.[2]

¶ 33    We agree that a board must strictly comply with the bylaws. In addition to *Palm*, this court has invariably found that a board must follow an association's bylaws. See *Goldberg*, 2012 IL App (1st) 110620; *Davis*, 387 Ill. App. 3d 676; *Litvak v. 155 Harbor Drive Condominium Ass'n*, 244 Ill. App. 3d 220, 226 (1993); *Wolinsky v. Kadison*, 114 Ill. App. 3d 527 (1983). Alliance attempts to distinguish these cases by asserting that they do not have bearing on a board's authority to enter into contracts with third parties. However, Alliance points to no authority to demonstrate that they are inapplicable and we have found none. We note that to the extent a third party makes a claim under a void contract, relief in such circumstances would have to be granted under equitable principles such as *quantum meruit*. *Fleissner v. Fitzgerald*, 403 Ill. App. 3d 355, 369 (2010) (holding that a party can recover based on equitable principles where a contract is unenforceable but not against public policy); see also *Filipiak v. Zintak*, 264 Ill. App. 392, 397 (1932).

¶ 34    Equitable relief would never be appropriate in this case, however, because once the initial Agreement was signed, Alliance had expressly assumed a fiduciary duty to be knowledgeable of Forest Villa's bylaws and to assist the Board in compliance with those terms. Although Skourlis testified that customarily he does not review an association's governing documents before entering into a contract, in this case, the subject contract was the renewal, and not the initial contract. When the Agreement was renewed, Alliance had been managing Forest Villa for almost three years and was, or should have been, well versed in its governing documents. Therefore, not only is Alliance not justified in its claim that it believed the Board had authority to renew the Agreement for a 36-month term, but failing to inform the Board of this

---

[2]In *Palm*, the board's sending of notice violated the declaration, whereas here, the Board violated the bylaws. The declaration and bylaws, however, are both governing documents beyond the scope of the Act. Moreover, the bylaws are recorded with the declaration. 765 ILCS 605/18 (West 2012). Therefore, we find *Palm* persuasive on this issue.

restriction was a breach of its fiduciary duty. Moreover, we note that Alliance was fully compensated for the services it performed.

¶ 35    Finally, Alliance contends that the Board's consistent disregard for the bylaws is evidence that it had the power to ignore them. In support of this contention, Alliance cites other instances where the Board's actions did not comply with the bylaws. This argument is without merit. Evidence of other violations does not validate the Board's waiver of the bylaws in executing a 36-month contract. Regardless of what the officers believed their powers to be and the number of times the Board allegedly violated the bylaws, each time it waived them, it exceeded its authority. *Palm*, 2014 IL App (1st) 111290.

¶ 36    Accordingly, we reject Alliance's argument that the Board had the power to waive the bylaws and conclude that the explicit language in the bylaws indicates that the Board lacked authority to execute the 36-month Agreement. Without authority, the contract is void and Alliance cannot recover under its terms. Because we find that the contract was void *ab initio*, we do not reach Alliance's arguments that liquidated damages are not unjust enrichment and that Forest Villa improperly terminated the Agreement.

¶ 37                                  Mutual Mistake of Fact

¶ 38    We are mindful of Alliance's argument that the parties' ignorance of the provision in the bylaws restricting the Board was a mutual mistake of fact and, therefore, the Agreement renewal was voidable and could be ratified. However, even if we did not find that the contract was void, this argument must fail.

¶ 39    When there is a mutual mistake of fact as to a material term, the contract is voidable and can be rescinded by an adversely affected party unless that party bears the risk of the mistake. *Jordan v. Knafel*, 378 Ill. App. 3d 219, 234 (2007); Restatement (Second) of Contracts § 152 (1981). A mutual mistake exists where both parties come to an understanding, then, unintentionally, a drafted and signed contract fails to express the true agreement. *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 272 (1999) (citing *Village of Oak Park v. Schwerdtner*, 288 Ill. App. 3d 716, 718 (1997)). "A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." Restatement (Second) of Contracts § 7 (1981); *Illinois State Bar Ass'n Mutual Insurance Co.*, 355 Ill. App. 3d at 164.

¶ 40    Here, both parties understood that the Agreement renewal for management services was for 36 months. Neither party believed that the terms or the subject matter of the renewal was any different than what was reflected in the written Agreement. This is not a circumstance where the parties' true intention was not memorialized in the Agreement because of a mistake. Forest Villa intended to compensate Alliance for 36 months and Alliance intended to provide management services for that period. Rather, here, the error in the formation of the contract resulted from both parties' lack of awareness of the restriction in the bylaws. In addition, generally, under Illinois law, a party cannot claim a mutual mistake when the mistake is the result of that party's lack of due care. *Cameron*, 305 Ill. App. 3d at 272 ("A mistake of fact is a mistake, 'not caused by the neglect of a legal duty on the part of the person making the mistake ***.' " *Id.* (quoting *Boyd v. Aetna Life Insurance Co.*, 310 Ill. App. 547, 555 (1941))). Here, as noted above, Alliance should have been aware at the time the Agreement renewal was signed that the Board did not have authority to enter into the

contract. Alliance cannot now claim that there was a mutual mistake for its benefit. Thus, in this case, there was no mutual mistake of fact.

¶ 41 Moreover, it is evident that Forest Villa could not have ratified the Agreement renewal. " 'For ratification to occur, the principal must, with full knowledge of the act, manifest an intent to abide and be bound by the transaction.' " *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 56 (2009) (quoting *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 858 (1998)). Here, the Board did not have knowledge of the restriction in the bylaws during the relevant period. In fact, less than two weeks into the renewal, when the Board had learned of the restriction, it sent a letter to Alliance informing it that Forest Villa wished to terminate the contract. Thus, Forest Villa could not have manifested an intent to ratify the Agreement renewal.

¶ 42                                                         CONCLUSION
¶ 43 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 44 Affirmed.