**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240342-U

Order filed March 25, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| JODY ANN WATSON, as co-trustee of the WATSON 2012 DYNASTY TRUST, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-24-0342 |
| v. | ) ) | Circuit No. 19-CH-1881 |
| SCOTT FALCONE, not individually but as co-trustee of the WATSON 2012 DYNASTY TRUST; 159TH STREET PROPERTIES, LLC; and ROBERT D. WATSON, III individually and in his capacity as Investment Advisor of the WATSON 2012 DYNASTY TRUST, | ) ) ) ) ) ) ) ) | |
| | ) ) | Honorable John C. Anderson, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Hettel and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*: The trial court improperly awarded summary judgment and surcharge damages when it incorrectly determined which of two trusts owned a membership interest in an LLC. Reversed.

¶ 2    Following the execution of two irrevocable trusts, a dispute arose over which trust owned a 100% membership interest in 159th Street Properties, LLC (159th Street). The circuit court determined the interest in 159th Street was held by the trust benefitting plaintiff Jody Ann Watson (Jody) and not the trust benefitting her ex-husband, defendant Robert D. Watson III (Robert). Thus, it granted summary judgment to Jody in her action for an accounting and later awarded her surcharge damages.

¶ 3    Robert and his co-defendants, 159th Street and Scott Falcone, appeal. We reverse.

¶ 4                                   I. BACKGROUND

¶ 5    Jody and Robert married in 1996 and have five adult children together. As of 2012, Robert was the sole owner of two automobile dealerships, various real properties including farmland, and a 100% membership interest in 159th Street. Robert operated one of his dealerships from property owned by 159th Street.

¶ 6    Due to anticipated changes in federal gift and estate tax laws in 2013, Robert retained attorney Stephanie Denby of Burke, Warren, MacKay & Serritella, P.C. (Burke Warren) in 2012 to advise him how to protect assets from tax in the future. According to Robert, the Watsons specifically sought to protect Robert's farmland and 159th Street membership interest from future taxes. According to a November 15, 2012, document signed by both Robert and Jody, Robert assigned his 159th Street membership interest to Jody. Jody was to transfer this interest into a trust at a later date in order to maximize tax savings. On December 20, 2012, Robert and Jody executed two irrevocable family trust agreements, the Watson 2012 Gift Trust (Gift Trust) and the Watson 2012 Dynasty Trust (Dynasty Trust).

2

¶ 7    Jody was the Gift Trust grantor, funding the trust with her 100% membership interest in 159th Street. Robert was the trustee of the Gift Trust, and the beneficiaries were Robert, his children[1], and their descendants.

¶ 8    Robert was the Dynasty Trust grantor, funding the trust with six parcels of real property. Jody and Falcone were co-trustees of the Dynasty Trust, and Robert served as investment advisor. The Dynasty Trust beneficiaries were Jody and the five children.

¶ 9    On December 21, 2012, Denby emailed Burke Warren attorney Mark Stern to prepare an assignment of the 159th Street interest from Robert to Jody, then an assignment from Jody to Robert "as trustee of *the Dynasty Trust*." (Emphasis added.) Stern prepared the assignment from Robert to Jody, backdating it to November 15, 2012. Stern also prepared a revised schedule I to 159th Street's operating agreement based on Denby's email. According to the revised schedule I, Robert was the manager, and Jody and Falcone, as trustees of the Dynasty Trust, were the tax matters partner and member[2] with 100% interest, effective December 31, 2012.

¶ 10    On December 27, 2012, Robert signed an amended operating agreement for 159th Street, making it manager-managed, and filed articles of amendment with the Secretary of State.

¶ 11    On December 31, 2012, Jody assigned her membership interest in 159th Street to Robert, who accepted it as "trustee of the Dynasty Trust" and acknowledged it as 159th Street's manager.

¶ 12    In January 2013, the deeds for the parcels referenced in the Dynasty Trust were recorded in Will County. Also in January, accountant Tracy Caldwell emailed Denby to finalize the trust agreements. Caldwell believed three checking accounts needed to be established, one each for the

---

[1] This includes the five children with Jody as well as Robert's children from a previous marriage.

[2] Tax matters partner and member are singular in the revised schedule I.

3

Dynasty Trust, the Gift Trust, and 159th Street. The funding for the Dynasty Trust was to come from the farmland rental income. The funding for the Gift Trust was to come from 159th Street's dealership rental income[3]. Denby agreed with Caldwell's assessment regarding the checking accounts and the funding sources. Robert and Jody followed this arrangement from 2013 to 2019.

¶ 13    Jody filed for divorce in May 2018. During those proceedings, Burke Warren conducted an internal investigation and discovered an error in the assignment executed by Jody on December 31, 2012. In a letter to both Robert and Jody dated November 19, 2019, the firm noted,

> "[W]hile the assignment form correctly identifies [Robert] as the Trustee to whom Jody transferred the ownership interests in 159th St. Properties, LLC, we incorrectly used the word 'Dynasty' in lieu of the word 'Gift' when identifying the trust for which [Robert] was acting as Trustee. [Robert] is a Trustee of the Gift Trust, but he is not a Trustee of the Dynasty Trust."

¶ 14    Jody then initiated this lawsuit on December 18, 2019, seeking accountings. Count I was a claim for an accounting of the Dynasty Trust against Falcone (not individually but as co-trustee of the Dynasty Trust) and Robert (not individually but as investment advisor of the Dynasty Trust). Count II was a claim for an accounting of 159th Street against Robert[4] and 159th Street.

¶ 15    Robert and Jody's settled the divorce on February 21, 2020. As part of the settlement, Robert and Falcone resigned from their roles in the Dynasty Trust. The settlement did not, however, resolve this litigation.

---

[3] The dealership paid 159th Street $75,000 as monthly rent.

[4] Count II does not specify whether it is against Robert individually or in his capacity as manager of 159th Street.

4

¶ 16         In February 2023, the parties filed cross-motions for summary judgment[5]. In her motion, Jody asserted the amended 159th Street operating agreement and the revised schedule I show the Dynasty Trust is the sole member and equity holder of 159th Street, and Robert and Falcone breached their fiduciary duties by diverting assets from the Dynasty Trust to the Gift Trust. In their motion, defendants contended the Dynasty Trust never held any interest in 159th Street, and Jody was attempting to take advantage of a scrivener's error. To their motion, defendants attached part of Denby's deposition testimony, Denby's affidavit, and Jody's 2012 gift tax return gifting 100% membership interest in 159th Street to Robert. Jody moved to strike portions of Denby's testimony and affidavit in March 2023. According to Jody, Denby's testimony was based on speculation, her opinions constituted previously undisclosed expert opinions, and Denby never communicated with Jody.

¶ 17         On August 2, 2023, the circuit court entered summary judgment in Jody's favor and ordered accountings of the Dynasty Trust and 159th Street. The circuit court found that 159th Street's amended operating agreement and revised schedule I established Jody, as trustee of the Dynasty Trust, holds 100% of the membership interest in 159th Street. It further determined Falcone, as co-trustee, and Robert, as investment advisor, breached their fiduciary duties to the Dynasty Trust. It also found Jody's 2012 gift tax return attached to defendants' motion inadmissible because it lacked her signature.

¶ 18         Defendants moved for reconsideration, arguing the court's ruling hinged on an erroneous legal finding and the membership interest in 159th Street was never transferred to the Dynasty Trust. According to defendants, the amended operating agreement did not legally control the

_____

[5] Defendants' motion was labeled as a partial motion for summary judgment, but defendants sought summary judgment on both counts as to all defendants.

determination of ownership, and the revised schedule I does not contain any words effectuating a transfer. Defendants argued, therefore, they should not have to account for 159th Street because the Dynasty Trust holds no interest in it. The court denied the motion to reconsider.

¶ 19 Defendants submitted accountings of 159th Street and the Dynasty Trust. Jody objected to these accountings and moved for surcharge and judgment against defendants. On January 24, 2024, after hearing arguments, the court entered a judgment in Jody's favor and surcharged Robert and Falcone $9,984,009.65 for rental income wrongly misappropriated from the Dynasty Trust.

¶ 20 On February 2, 2024, defendant's moved to vacate or modify the January 24 order. They submitted numerous affidavits and exhibits as additional evidence. Defendants argued the judgment order was an impermissible double recovery and windfall to Jody. Jody moved to strike the additional evidence. On April 22, the court granted Jody's motion to strike and denied defendants' motion to vacate or modify. Defendants appealed.

¶ 21 II. ANALYSIS

¶ 22 The ultimate issue on appeal is which trust, the Gift Trust or the Dynasty Trust, holds ownership interest in 159th Street. The parties also dispute several other issues, including whether (1) the court erred in striking Denby's testimony, (2) damages can be awarded against Falcone when Jody did not sue him individually, (3) the $9.98 million in surcharge damages constitutes double recovery, (4) Robert or the Dynasty Trust need to pay taxes on the surcharged amount, (5) the court should have considered Jody's 2012 Federal Gift Tax Return, (6) the court correctly ordered accountings for 159th Street and the Dynasty Trust, and (7) the court erred by striking exhibits that were submitted after summary judgment. Because we find the ultimate issue dispositive, we will not address the other issues.

¶ 23    Defendants argue the circuit court erred in granting Jody's motion for summary judgment and denying defendants' partial motion for summary judgment because the Gift Trust owns 159th Street. Defendants assert the Gift Trust, signed by Jody, unequivocally establishes her irrevocable gift of 159th Street to the Gift Trust on December 20, 2012. They maintain she could not have assigned the 159th Street ownership interest on December 31, because she did not have the right to control or transfer that interest after December 20, when she signed the trust. Defendants further argue that, for six years after Robert accepted Jody's gift, the Watsons acted as though the Gift Trust owned 159th Street, distributing the dealership's rental payments through 159th Street to the Gift Trust. Moreover, they contend, the circuit court's ruling results in an impermissible rewriting and absurd interpretation of both trusts.

¶ 24    Jody argues she had no interest in 159th Street on December 20, 2012; so "as a matter of law and physics," she could not have conveyed an interest in 159th Street to the Gift Trust. She notes the first document that assigned Robert's interest in 159th Street to her individually was not drafted until December 21, after the trusts were executed, essentially arguing the backdating of the assignment was ineffective. Moreover, she contends, an LLC's operating agreement controls the rights of its members, and Robert had no standing to challenge Jody's transfer after he assigned his 100% interest in 159th Street to her.

¶ 25    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review a trial court's decision regarding cross-motions for

7

summary judgment *de novo*. *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 25. Construction of a trust is a question of law that we also review *de novo*. *Id.*

¶ 26    "In construing a trust, a court applies the same rules of construction that apply to wills and other contracts." *Hill v. Brinkman, Trustee of Marciano Family Trust*, 2023 IL App (3d) 220394, ¶ 18. The main goal in interpreting a trust is to ascertain and give effect to the settlor's intent, which must be determined from the plain and ordinary meaning of the trust document when viewing the document as a whole. *Id.*

¶ 27    Here, there is no dispute the parties created two separate trusts: the Gift Trust and the Dynasty Trust. Jody was the Gift Trust grantor, Robert was its trustee and beneficiary, and Jody irrevocably promised to deliver her 100% interest in 159th Street to the trustee, Robert. According to the December 31, 2012, assignment, Jody assigned her membership interest in 159th Street to Robert, "not individually, but as Trustee of the Watson 2012 Dynasty Trust[.]" On the same day, Robert signed the acceptance as trustee of the Dynasty Trust and signed the acknowledgment as 159th Street's manager. The trust itself is not ambiguous, and it is clear the December 31 assignment, which was drafted based on Denby's email, contains a scrivener's error. "A 'scrivener's error' or 'clerical error' is one 'resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination.' " *Handelsman v. Handelsman*, 366 Ill. App. 3d 1122, 1135 (2006) (quoting *Schaffner v. 514 West Grant Place Condominium Ass'n,* 324 Ill. App. 3d 1033, 1042 (2001)). However, an error does not qualify as a scrivener's error if it "is the deliberate or conscious result of the exercise of judicial or professional judgment, or a misapprehension of the law or the facts." *Id.* Neither the Gift Trust nor the assignment are ambiguous on their own, but they conflict. When read with the Gift Trust, the assignment should have assigned membership interest to Robert, as trustee of the *Gift Trust*,

and he should have accepted it as a trustee of the *Gift Trust*. Any other interpretation would make the Gift Trust meaningless. Jody is the trustee and beneficiary of the Dynasty Trust, and the Dynasty Trust was initially funded with farmland. 159th Street is not mentioned anywhere within the Dynasty Trust. Gifting 159th Street to the Dynasty Trust would leave the Gift Trust unfunded.

¶ 28    The record is devoid of any evidence that the error was a deliberate or conscious result of professional judgment or a misapprehension of the law. Moreover, Jody and Robert's conduct following the execution of the trusts belies any suggestion the mistake was due to a misapprehension of the facts. During the last years of their marriage, the dealership paid $75,000 in monthly rent to 159th Street, and 159th Street issued distribution checks to the Gift Trust, not the Dynasty Trust. There were no problems with this arrangement until Burke Warren discovered the assignment error in 2019. The December 31 assignment contains a mutual mistake. "A mutual mistake exists where both parties come to an understanding, then, unintentionally, a drafted and signed contract fails to express the true agreement." *Alliance Property Management, Ltd. v. Forest Villa of Countryside Condominium Ass'n*, 2015 IL App (1st) 150169, ¶ 39. Although the assignment, and then 159th Street's revised schedule I, indicated the Dynasty Trust owns 159th Street, the parties' actions indicate the Gift Trust owns 159th Street, as specified in the Gift Trust itself.

¶ 29    Moreover, the record is replete with Jody's admissions that she received a 100% interest in 159th Street on November 15, 2012, beginning with her complaint for accountings. There, she alleged that, on November 15, 2012, Robert assigned his 100% membership interest in 159th Street to Jody. She also alleged that she executed an acceptance of the membership interest, and that Robert executed an acknowledgment of the transfer. Although Jody notes her complaint is unverified, "[a]n admission in an unverified pleading signed by an attorney is binding on the party

9

as a judicial admission." *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 558 (2005). "Judicial admissions are defined as 'deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge[,]' " and "are conclusively binding on a party." *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 37. Additional admissions are found in her statement of undisputed facts contained in her motion for summary judgment, deposition testimony, and reply to affirmative defenses. By her own admissions[6], Jody owned a 100% membership interest before December 20, 2012, and could therefore gift that interest into an irrevocable trust on December 20. Jody's argument that she could not transfer what she did not own before December 21 is undermined by her own admissions.

¶ 30    Because we find the Gift Trust owns 159th Street and the inclusion of the Dynasty Trust on the December 31 assignment was a scrivener's error, the circuit court erred when it granted Jody's motion for summary judgment and denied defendants' motion for partial summary judgment. We reverse Jody's motion for summary judgment and grant defendants' partial motion for summary judgment. As part of this conclusion, we necessarily vacate all the orders following the improper granting of summary judgment. Because the Dynasty Trust does not own 159th Street, Jody is not entitled to the surcharge damages or an accounting of 159th Street. She already obtained the accounting of the Dynasty Trust that she sought in her complaint. In light of our conclusion, we decline to address the other issues raised by the parties.

---

[6] We distinguish this case from our recent decision in *Urban v. ITI Intermodal, Inc.*, 2025 IL App (3d) 240496-U. *Urban* involved an original unverified complaint and an amended unverified complaint. "[I]f an original pleading is not verified, its allegations become nonbinding evidentiary admissions *when the pleading is amended*." (Emphasis added.) *Urban*, 2025 IL App (3d) 240496-U , ¶ 35. Here, Jody's unverified complaint was never amended. Therefore, it remains binding on Jody as a judicial admission.

¶ 31                    III. CONCLUSION

¶ 32        The judgment of the circuit court of Will County is reversed.

¶ 33        Reversed.